174 N.J. Super. 107 (1980)
415 A.2d 1174
MARY WEITZEL GIBBONS, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
FELTON LEWIS GIBBONS, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 26, 1980.
Decided May 12, 1980.
*109 Before Judges LORA, ANTELL and PRESSLER.
Alfred L. Ferguson argued the cause for the appellant (McCarter & English, attorneys).
Richard L. Amster argued the cause for the respondent (Amster & Levin, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
This appeal from a judgment of divorce raises troublesome problems regarding the equitable distribution of gifts and inheritances received by each of the spouses during the marriage.
The parties, each of whom comes from a wealthy and generous family, were married in 1952, a year following the husband's graduation from Yale University and the wife's graduation from Vassar College. He at that time had already received from his father, who died in 1950, gifts of stock whose 1976 valuation was in excess of $600,000, and she had received from her family stocks having a 1976 value of $135,000. After the marriage both continued to receive from their respective families additional *110 gifts and distributions from testamentary trusts. The husband also received outright from the wife's mother a substantial stock gift. By the time of the divorce in 1978, the gifts and inheritances received during the marriage by the husband and to which he had retained exclusive title amounted to some $2,167,000. The gifts and inheritances received by the wife during the marriage and separately retained by her totaled some $1,016,000. In addition to these separately maintained assets, the parties had also acquired during the marriage jointly owned assets totaling $421,500, which were primarily paid for by the husband but whose purchase was to some degree contributed to by the wife. These included cash, the proceeds of the sale of their homes in Princeton, New Jersey, and Florence, Italy, land in Rhode Island, an art collection and automobiles.
The disposition of the trial judge in dealing with the equitable distribution question was, essentially, to distribute all of the assets acquired by both or either during the marriage equally between the parties. The mechanics by which this equality was achieved was the equal division between the parties of the jointly owned assets, retention by the wife of the separate estate she had acquired during marriage, and the requirement that the husband pay the wife out of the separate estate he had acquired during the marriage the sum of $575,000. Thus, each party left the marriage with $1,802,250, plus accrued interest and plus the assets each had acquired prior to the marriage.[1] We also note that the wife neither sought nor was awarded alimony and that an award of counsel fees which she did seek was denied.
The trial judge's basic reasoning for his ordered equal division of all assets was his conclusion that the marriage, of some 26 years duration, had been in every significant respect characterized *111 by the parties' equal contribution thereto in the fullest and most salutary sense of equal marriage. Our review of the record satisfies us that this conclusion is well-founded in the record. When the parties were married the wife gave up the graduate study which she was then pursuing in art history at New York University in order to be with her husband, who was then in the Navy and stationed first in California and then overseas. His honorable discharge from the Navy in 1954 was preceded by a period of hospitalization in Philadelphia during which the wife was at his side. The husband apparently had suffered, particularly in the earlier years of the marriage, from recurring acute episodes of depression requiring hospitalizations and extended periods of out-patient care. These problems apparently have more recently, however, been well controlled. The significance of these facts is the committed degree of supportiveness with which the wife responded to these difficult circumstances, having opted because of them to defer for many years her own professional pursuits.
Upon the husband's discharge from the Navy in 1954 the couple took up residence in Cambridge, Massachusetts, where he enrolled in the Harvard Law School and she in the Harvard Graduate School of Fine Arts. Following his first year of law school he abandoned his original career objective and enrolled in the Harvard Graduate School of Fine Arts from which he ultimately earned a doctorate degree in art history. The wife completed her master's degree in 1957 but did not then proceed with her doctoral studies because of her perception that her husband's illness made prior claim upon her time and resources. In 1957 the couple's first child was born, and in 1958 the second. Both are now college students, one at Yale and the other at Vassar, and each is the beneficiary of various trusts created for them by the husband and by the wife's family.
During the early period of the marriage the wife herself became physically ill and required several operations. The husband responded to these problems in a fully supportive manner. *112 It was also during this period that the couple commenced their practice of spending their summers in Italy with the children, a custom initiated because of the husband's professional needs. In 1960 the husband received his first teaching appointment to Princeton University where he is now an associate professor of art history. The family has resided in Princeton since that time and during the ensuing years the wife devoted herself largely to family and charitable concerns. She resumed her doctoral studies in 1972 at Rutgers University and is now an art history instructor at Vassar College. It was apparently the wife's decision to pursue this professional career which contributed substantially to the parties' inability to continue with this marriage despite the efforts which both made to preserve it.
It is perfectly clear that the parties during the marriage enjoyed an affluent life style, hardly commensurate with the husband's earned income but dependent rather on the capital which came to both and particularly to the husband by way of gift and inheritance. It is also clear that while there was substantial disparity in the amount of wealth each received, neither held back from contributing commensurately to the benefit of the family and its life style.
The position taken by the husband is that under the circumstances here equitable distribution should have been limited to, if anything at all, the joint assets. He argues that in view of the amounts of the wife's separate estate, there is no rational basis justifying her sharing in his separate and larger fortune. It is his contention that she does not need any part of it and did not contribute in any way to its acquisition. In our view these arguments are antithetical to the philosophy of equitable distribution as conceived of by the Legislature in its enactment of N.J.S.A. 2A:34-23 and as developed and articulated since that enactment by our Supreme Court.
As we understand the concept of equitable distribution, it is a corollary of the principal concept that marriage is a joint *113 enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition. Thus, the extent to which each of the parties contributes to the marriage is not measurable only by the amount of money contributed to it during the period of its endurance but rather by the whole complex of financial and nonfinancial components contributed. The function of equitable distribution is to recognize that when the marriage ends, each of the spouses, based on the totality of the contribution made to it, has a stake in and right to a share of the family assets accumulated while it endured, not because that share is needed but because those assets represent the capital product of what was essentially a partnership entity. As the Supreme Court expressed the relationship between equitable distribution and the partnership theory of marriage in Rothman v. Rothman, 65 N.J. 219 (1974),
It [equitable distribution] gives recognition to the essential supportive role played by the wife in the home, acknowledging that as homemaker, wife and mother she should clearly be entitled to a share of family assets accumulated during the marriage. Thus the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership. Only if it is clearly understood that far more than economic factors are involved, will the resulting distribution be equitable within the true intent and meaning of the statute. [At 229]
Articulation of principle is generally a task considerably less formidable than its application, and equitable distribution is no exception to this rule. We are not, however, completely without guidelines in determining, without having to resort to mechanistic formulas, what in any given marriage will be an equitable *114 distribution of the family assets, and we rely heavily, as we must, on the discretion of the trial judge in making these delicate and difficult judgments. Those guidelines include, of course, the nonexclusive list of factors set forth in Painter v. Painter, 65 N.J. 196 (1973), to wit
(1) respective age, background and earning ability of the parties; (2) duration of the marriage; (3) the standard of living of the parties during the marriage; (4) what money or property each brought into the marriage; (5) the present income of the parties; (6) the property acquired during the marriage by either or both parties; (7) the source of acquisition; (8) the current value and income producing capacity of the property; (9) the debts and liabilities of the parties to the marriage; (10) the present mental and physical health of the parties; (11) the probability of continuing present employment at present earnings or better in the future; (12) effect of distribution of assets on the ability to pay alimony and support, and (13) gifts from one spouse to the other during marriage. [118 N.J. Super. 332 at 335] [at 211]
We also know from Painter that gifts and inheritances are distributable assets. And we know that neither need nor direct contribution to the acquisition of assets is in any measure a dispositive factor.
Thus, the sole ultimate question before us is whether the trial judge mistakenly exercised discretion by equally dividing all of the assets, both joint and individual, under the facts in this case and the totality of the circumstances, history and living-out of this marriage. We recognize that a trial judge does not fulfill his heavy judgmental obligation by routinely or mechanistically dividing the marital assets equally. Rothman v. Rothman, supra, 65 N.J. at 232-233. Nevertheless, we also recognize that there are some marriages as to which an equal division is appropriate in view of its duration, the extent and nature of the spousal commitment, and the extent and nature of the marital assets. We cannot say that the trial judge here erred in perceiving this to have been such a marriage.
*115 In affirming the decision of the trial judge we have declined to accept the thesis that different rules of equitable distribution should be applied in the case of inheritances and gifts received during the marriage, at least where the donative intent of the testator or donor was to benefit one of the spouses exclusively. In respect of such assets, our dissenting colleague suggests that the other spouse should be entitled to share in that category of asset only if the nonsharing will result in grossly disparate inequality or other manifest injustice and, if so, only to the extent necessary to "repair the inequity or relieve the injustice." We are unable under the present state of the law to justify this essential withholding of gifts and inheritances from the application of the general principles of equitable distribution. Certainly, no such discreteness has been presaged by the Supreme Court in its consideration of the distributability of this type of asset. See, e.g., Mey v. Mey, 79 N.J. 121 (1979); Gauger v. Gauger, 73 N.J. 538 (1977).
We are unpersuaded, moreover, that a donative intent to benefit only one of the spouses should be a critical consideration. First, we are skeptical of the proposition that donative intent is ordinarily a matter of ready ascertainment. This is especially so in the testamentary situation, particularly where, as here, the will is drawn when the benefitted spouse is a child and he marries after the testator's death. Nor do we believe that a presumption to exclude the beneficiary's spouse is raised by the terms of the typical bequest itself.[2] We thus foresee that in many instances, if not in the majority of them, determination of donative intent for purposes of equitable distribution will inevitably require trial forays into the testator's probable intent, an *116 exercise which we regard as particularly futile where the will predates the marriage. See generally as to probable intent, Engle v. Siegel, 74 N.J. 287 (1977). The raising of such collateral issues would, in our view, not only unreasonably encumber matrimonial litigation but would also encumber it unnecessarily. In any event, the effect of an outright gift or bequest is to place that property within the absolute control of the beneficiary, and hence if there is any presumed intention at all in the making an outright gift, it is precisely that  to give the beneficiary absolute control over it. Thus, at the point that the property vests in him absolutely, it necessarily becomes subject to the same predicates, burdens and circumscriptions as the beneficiary's personal circumstances and as the law imposes on his ownership of any other property.
We perceive, moreover, little functional difference between an inheritance and any other type of unearned asset vis-a-vis either the marriage or equitable distribution, and consequently we see no justification for treating an inheritance in that context radically differently from, for example, a winning lottery ticket or capital gains. These are all financial circumstances of the marriage in the same sense in which any other accumulation, earned or unearned, is. We would further suggest that the receipt of a substantial inheritance bears always the potential consequence of permitting the beneficiary and his family to pursue nonremunerative activities or activities producing less remuneration than they would otherwise have engaged in. That was apparently the case here. The point is that if the spouse were engaged in asset-accumulating activity during the marriage, the accumulated assets would be subject to the ordinary rules of equal distribution. It is not reasonable in our view to exempt from those ordinary rules the inheritance which, because it freed him from the necessity or inducement to accumulate assets of his own, stands, functionally, in the place of earned assets.
*117 We are aware, of course, of the legislative events referred to by our dissenting colleague and the differing views of the distributability at all of gifted and inheritance wealth which are motivating them. But nondistributability is not now the law and we must apply the law as it presently is.
On the wife's cross-appeal she argues that the trial judge erred in crediting defendant's personal estate $120,000 as reflecting the incremental value of his ineligible assets and in disallowing her requests for a counsel fee. We find that both determinations are supported by substantial credible evidence, and we affirm them. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974). The decision to deny an allowance of counsel fees lay within the discretion of the court. Williams v. Williams, 59 N.J. 229, 233 (1971).
The judgment appealed from is affirmed.
ANTELL, J.A.D. (dissenting).
I would first place in perspective the majority's observation that the jointly owned assets, which totalled $420,500, were "to some degree contributed to by the wife." These assets consisted of $45,000 in a savings account, proceeds of $176,000 from the sale of their Princeton home, proceeds of $116,500 from the sale of their home in Florence, Italy, Rhode Island real estate valued at $28,000, and an art collection appraised for $55,000. The wife's contribution consisted of $5,000 toward the purchase of the Princeton home which was bought for $65,000, $3,000 toward the purchase of the home in Florence which was bought for $63,000, $5,000 toward the purchase of the Rhode Island real estate which was bought for $25,000 and $10,000 in the savings account. She also paid for the cost of some of the transatlantic crossings to their home in Florence. Everything else was paid for entirely out of defendant's money. Despite the extraordinary disproportion in their relative contributions, defendant has *118 submitted to the equal distribution of these assets and does not complain that it is inequitable.
During the marriage the family's living expenses were met solely out of defendant's investment income and modest earnings. From these sources he set up trusts for the children and he provides for their education at Yale and Vassar. It was he who paid all federal income taxes, not only on his income but also on plaintiff's. Plaintiff's investment income was used principally to acquire "special things" for herself, and the unused portion thereof was reinvested in stocks and bonds and kept in savings accounts with great resulting benefit to her separate estate. Nevertheless, plaintiff has now been awarded not only 50% of the jointly held assets which were 90% paid for by defendant, but also 50% of defendant's separate estate which he acquired from his parents by gift and devise during the marriage. To my view this does not represent fair and equitable distribution.
The determination under review, whereby equal distribution of all eligible inherited and gifted wealth was ordered, rests upon the trial judge's stated premise that
... if the contributions of the parties to the marriage were essentially equal, they should essentially have equal rights to the things which were acquired during the marriage.
The contributions measured were described by the judge as those which were made "in cash and in labors and in contribution of services and love for each other and to their children."
Logically, the intent of this "equal marriage  equal distribution" mechanism must be that if the contributions, tangible and intangible, economic and noneconomic, are unequal, so that those of one, taken together, are adjudged greater than those of the other, then the distribution must be made in the same proportion in which these vaguely defined resources were contributed to the marriage. Thus, the majority lays the groundwork for future matrimonial contests in which the adversaries compete for a determination, virtually unreviewable, as to who *119 did most for the marriage under standards which will depend on the values subjectively chosen by each trial judge for the particular contribution made. The determination of how to achieve an equitable distribution of the marital estate was never intended to be so whimsical an undertaking.
Furthermore, the majority's concept in this context of an "equal marriage" is of no workable value. In practice, matrimonial judges would probably make this assessment of most marriages they are called upon to dissolve. To direct a 50% distribution of the marital assets in all such cases would ignore the express disapproval of 50% divisions even as a presumptive starting point for the allocation of assets which was voiced in Rothman v. Rothman, 65 N.J. 219, 232 (1974), because of their obvious potential for "unjust results." While the approach has the virtue of simplicity, simplicity is not equity, especially where it is brought about by sacrificing the plasticity and attention to detail expected in a court of conscience. As the Supreme Court explained in Rothman, supra at 232 33, n. 6:
Rejecting any simple formula, we rather believe that each case should be examined as an individual and particular entity. The point has been well expressed in an opinion of the Supreme Court of Wisconsin,
The formula for division derives from the facts of the individual case. If it is argued that this approach gives great leeway and also places a heavy responsibility on trial courts in divorce cases, there is no gainsaying that fact. However, both flexibility and responsibility are called for by the endless variety of human situations that come to court in family cases. No two are exactly alike. [Lacey v. Lacey, 45 Wis.2d 378, 173 N.W.2d 142, 145 (1970)]
The law recognizes the right of married couples to acquire and hold property for their individual estates, and no change in the ownership of property occurs until the court has weighed the equities and a judgment of allocation has been entered. Id. at 230; Painter v. Painter, supra, 65 N.J. at 216, n. 5. The familiar "guideline criteria" of Painter v. Painter, supra at 211, suggest the wide range of factors which, singly or in combination, may *120 play a part in the final resolution, their weight and measure varying with the demands of the particular case presented. These include:
(1) respective age, background and earning ability of the parties; (2) duration of the marriage; (3) the standard of living of the parties during the marriage; (4) what money or property each brought into the marriage; (5) the present income of the parties; (6) the property acquired during the marriage by either or both parties; (7) the source of acquisition; (8) the current value and income producing capacity of the property; (9) the debts and liabilities of the parties to the marriage; (10) the present mental and physical health of the parties; (11) the probability of continuing present employment at present earnings or better in the future; (12) effect of distribution of assets on the ability to pay alimony and support, and (13) gifts from one spouse to the other during marriage. [118 N.J. Super. at 335]
Noted also were the following criteria approved by the American Bar Association:
(1) contribution of each spouse to acquisition of the marital property, including contribution of a spouse as homemaker;
(2) value of the property set apart to each spouse;
(3) duration of the marriage; and
(4) economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children. [Id. at 212]
Observing that these factors are "obviously intended to be illustrative and not exhaustive", Justice Mountain then summarized the judicial function in the following words:
The trial judge must in each case regard all of the particular circumstances of the individuals before the court, and having weighed and evaluated them reach a determination as to how best to fulfill the mandate of the statute. * * * The judicial task may upon occasion be a difficult one but it will hardly be novel. Seeking just and equitable results is and has always been inherent in the judicial function; it has been a chief concern of the courts for many centuries. [Id. at 212].
The order of distribution signed by the trial judge herein was not arrived at by the required process of studying the equities. *121 To hold that because plaintiff's contribution to the marriage equaled defendant's she is entitled to an equal share of his personal inheritances is an inadequate substitute for a reasoned statement of why this result should obtain, and introduces an element of formalism which is incompatible with the search for a just and equitable resolution.
In reaching my conclusion I do not overlook the trial judge's extensive treatment of the facts surrounding plaintiff's decision to defer her career aspirations, nor the majority's inordinate emphasis on defendant's mental illness early in the marriage. But these are merely the elements whereof the trial judge formed his decision that the parties had contributed equally to the maintenance of the marriage. The wife also experienced critically serious illness in 1958-59, and it was defendant who then provided the needed care, love and attention. Moreover, as I have already noted, it was defendant's income which supported the family over the years, educated the children, provided the comfortable life and the wherewithal to acquire the jointly held assets which were equally divided. It is conceded that both parties met their responsibilities to the marriage. This is not in question. The question is how to accomplish an equitable distribution of their marital estate.
Most conspicuous by its absence from the trial judge's deliberations is any expression of concern as to the "source of acquisition" of the property to be distributed (Painter guideline 7). In this case the assets were acquired by defendant through the bequests and gifts of his parents.
In my judgment the right of a donor or testator to rely on the expectation that his or her intentions will be fulfilled is an equity of cardinal priority which should prevail in all cases except where necessary to avert palpable injustice.
Assembly Bill 762 (1978), passed by both houses of the Legislature, would have amended N.J.S.A. 2A:34 23 by entirely excluding *122 from the marital estate for purposes of equitable distribution property acquired during marriage by gift, devise or bequest. The bill was conditionally pocket vetoed,[1] but in his veto message, filed February 15, 1980 the Governor expressed his support for the substance of the amendatory bill in the following terms:
The exemptions of gifts, devises and bequests from equitable distribution is fair and is consistent with the desires of the donor or decedent. In the majority of instances the gifts, devises or bequests in question will be from the parent or other relative of the recipient. To permit a compulsory division of the assets between the recipient and his spouse is contrary to the natural expectation of the recipient and the giving parent or relative. Since the efforts of neither spouse results in the gift, devise or bequest, it need not be regarded as a marital asset under the partnership concept of marriage.
Allowing fully, as I must, for the holding of Painter v. Painter, supra, that inherited assets be included in the marital estate for purposes of distribution, I am drawn by the philosophy of the foregoing statement to conclude that the donative and testamentary intent unequivocally expressed by defendant's deceased parents in transferring their accumulated wealth to him is of such distinctive importance as to outweigh the equities articulated by the trial judge in favor of distribution. In deciding otherwise, the majority disregards the perfectly understandable concerns expressed by the other two branches of government, and in fact gives substance to their most acute anxieties. It practically assures that all gifts and inheritances, whether in the form of jewelry, money or an interest in the *123 family business, passing from parent to child must be distributed equally to the alienated spouse in the event of divorce.
The policy underlying the concept of equitable distribution is well understood. It is intended to safeguard against the uncertainties of alimony payments and to give recognition to the essential supportive role played by the wife. Rothman v. Rothman, supra, 65 N.J. at 229. Here, however, it has been used not as an instrument of justice, but merely as a means of redistributing privately owned wealth. Although equitable jurisdiction over inherited and gifted assets is clearly desirable, in my view it should be exercised only upon a finding that failure to do so will result in grossly disparate and unfair inequality, or some other manifest injustice, in the relative circumstances of the parties under criteria expressed or implied in Painter v. Painter, supra. Further, if distribution of such assets is ordered, it should not be in an amount greater than what is articulably related to what is needed to repair the inequity or relieve the injustice.
In the circumstances of this case, without distribution of the gifted and inherited wealth, plaintiff will leave the marriage with assets of $1,361,750. For the year 1976, apart from nontaxable revenue, she received dividend and interest income in excess of $61,000. She is in good health, is gainfully employed full-time in her chosen profession, and has nearly completed her doctoral requirements. Her children are well provided for, her finances easily permit her to continue the style of life she has heretofore enjoyed, and she has expectations of future gifts and inheritances. Tested by the standards which I have stated are appropriate, the judgment below merits reversal to the extent that it orders distribution of the parties' gifted and inherited assets.
NOTES
[1] The substantial expectancies which each of the parties has in the estates of their respective mothers were not taken into account. The record suggests, however, that the husband's expectancy exceeds by far all of the assets acquired by both parties during the marriage.
[2] We cannot but be aware that particularly in affluent circumstances, the form of gift or bequest and the manner in which the donee or beneficiary maintains title are matters dictated as much by estate, gift and income tax considerations as they are by actual dispositive intentions.
[1] The governor's objection was twofold: (1) the language of the bill was so broad as to exclude gifts between spouses from equitable distribution; (2) a procedural feature of the bill was construable as an invasion of the Supreme Court's rule-making power. His message recommended that the bill "be resubmitted with amendments consistent with this Statement." On February 28, 1980 Assembly Bill 1229 was introduced. This bill, which substantially conforms with the governor's recommendations, has been passed in the Assembly and is now awaiting Senate action.