**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2943-21

GREGORY C. LUND,

    Plaintiff-Appellant/
Cross-Respondent,

    v.

CAROLINE LUND,

    Defendant-Respondent/
Cross-Appellant.

_____

Submitted January 23, 2024 – Decided February 14, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-0717-20.

August J. Landi, Jr., attorney for appellant/cross-respondent.

Central Jersey Legal Services, Inc., attorneys for respondent/cross-appellant (Marysol Rosado Thomas, on the brief).

PER CURIAM

Plaintiff Gregory C. Lund appeals from portions of an April 12, 2022 Dual Judgment of Divorce (DJOD). Defendant Caroline Lund cross-appeals from the judge's failure to address her request to enforce a November 8, 2019 pendente lite order compelling plaintiff's payment of transportation expenses. We affirm as to the issues raised in plaintiff's appeal. We remand to the Family Part on the cross-appeal to address defendant's request for reimbursement of pendente lite transportation expenses and the award of a Mallamo[1] credit to plaintiff for expenses which plaintiff admitted he failed to pay.

We recite the facts from the four days of trial testimony. Plaintiff and defendant married in 1996. The parties have two adult children: Matthew and Tyler, born in 1999. Defendant and the now two adult children live in an apartment with defendant's mother and defendant's sister. Based on his disabilities, Matthew is unemancipated and receives Medicaid and Supplemental Security Income (SSI) benefits. Defendant, except for three short-term positions and $310 per month received from the government to care for her elderly mother, has been unemployed since the birth of the children.

---

[1] Mallamo v. Mallamo, 280 N.J. Super. 8, 11-12 (App. Div. 1995).

A-2943-21

In 2007, plaintiff began employment as a clinical engineering manager at a hospital in Staten Island. Through his employment, plaintiff received an employer-contributed cash balance account and an employer-contributed 403(b) account.

The parties separated on November 9, 2012. After the separation, plaintiff lived with friends and family until he purchased a mobile home in October 2020. Plaintiff paid the family's expenses after the parties separated. Defendant lived in the family apartment with the two children and cared for the children.

On September 19, 2019, plaintiff filed a complaint for divorce. He also filed a motion for pendente lite support. Defendant cross-moved for pendente lite support. In a November 8, 2019 order, the judge awarded pendente lite support to defendant, including plaintiff's payment of defendant's transportation expenses in the amount of $278 per month.

According to defendant, plaintiff failed to pay the transportation portion of the pendente lite order from January through April, 2022.[2] As a result of plaintiff's non-payment of these expenses, defendant, in her March 16, 2022 written summation, requested the judge compel plaintiff's payment of

_____

[2] In a March 23, 2023 order, we allowed defendant to supplement the record to include documentation evidencing plaintiff's nonpayment of the April 2022 transportation expenses.

3

transportation arrears. Alternatively, if the judge was not inclined to compel plaintiff's payment of the transportation expenses, defendant requested an adjustment to any Mallamo credits awarded by the judge.

After hearing the testimony, and considering the parties' written summations, the judge entered the DJOD, addressing equitable distribution, child support, and pendente lite support.[3]

In determining equitable distribution of the marital assets, the judge considered the applicable factors under N.J.S.A. 2A:34-23.1: the parties' twenty-six years of marriage; their ages and medical histories; defendant's custodial responsibilities for Matthew; defendant's lack of higher education and lack of work history; her failure to obtain full-time employment; plaintiff's payment of marital expenses and ability to accrue assets during the marriage; and the value of the parties' assets, including plaintiff's cash balance account and 403(b) account.

In arriving at a date for calculating equitable distribution of the marital assets, the judge determined the marriage ended on September 19, 2019, which was the date plaintiff filed his divorce complaint. While plaintiff argued the

---

[3] The DJOD also addressed plaintiff's payment of alimony. The alimony award is not challenged on the appeal or cross-appeal.

A-2943-21

marriage ended when the parties separated in November 2012, the judge found plaintiff "contro[lled] . . . when to file for divorce" and therefore "acquiesce[d to] the filing date being the appropriate date." The judge awarded defendant one-half the value of plaintiff's 403(b) account as of September 19, 2019, and found plaintiff solely responsible for a $14,000 loan he took against the 403(b) account.

The judge also calculated plaintiff's child support obligation for Matthew to be $658 monthly. However, the judge explained:

> In New Jersey, "child support belongs to the child; therefore, child support paid directly to a parent is considered an asset of the child in the nature of unearned income and will disqualify the child for government benefits." J.B. v. W.B., 215 N.J. 305, 324 [(citations omitted)]. Accordingly, if [p]laintiff pays child support to [d]efendant, Matthew's government benefits would be terminated.

Because he recognized receipt of child support would terminate Matthew's receipt of governmental benefits, the judge directed plaintiff to pay the following expenses, which had an "impact on Matthew," directly to the providers: defendant's $272 monthly electric and gas bill; defendant's $160 monthly cellular phone bill; and defendant's $257 monthly auto insurance payment. These monthly payments were roughly the same amount as plaintiff's monthly child support obligation for Matthew.

5

On appeal, plaintiff argues the judge erred in determining the September 19, 2019 filing of the divorce complaint as the date for calculating equitable distribution of the marital assets. He further contends the judge erred in awarding defendant one-half of his 403(b) account as of September 19, 2019.

Additionally, plaintiff asserts the judge erred in directing him to pay defendant's gas, electric, cellular phone, and auto insurance bills directly to the providers in lieu of a direct child support payment for Matthew. Plaintiff argues such payments improperly benefitted other residents of defendant's household, violated the Thirteenth Amendment's prohibition on involuntary servitude, and were likely to exceed his monthly child support obligation. We reject plaintiff's arguments.

Our review of a Family Part order is limited. See Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "review [a] Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 412). Such deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

A-2943-21

"Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Thieme, 227 N.J. at 283 (quoting Cesare, 154 N.J. at 411-12). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). However, we review legal issues de novo. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

We first address plaintiff's argument regarding the date for calculation of equitable distribution of the marital assets. A judge's allocation of marital assets will be reviewed for abuse of discretion and overturned only if the judge's "findings were mistaken," the "determination could not reasonably have been reached on sufficient credible evidence present in the record," or the judge "failed to consider all of the controlling legal principles." Slutsky v. Slutsky, 451 N.J. Super. 332, 355-56 (App. Div. 2017) (quoting Gonzalez-Posse v. Ricciardulli, 410 N.J. Super. 340, 354 (App. Div. 2009)).

"[F]or purposes of the equitable distribution of marital assets, a marriage is deemed to end on the day a valid complaint for divorce is filed that commences a proceeding culminating in a final judgment of divorce." Genovese v. Genovese, 392 N.J. Super. 215, 225 (App. Div. 2007) (quoting Portner v.

7

A-2943-21

Portner, 93 N.J. 215, 225 (1983)).  "[M]ere physical separation alone is an insufficient indication that a marriage is effectively at an end."  Brandenburg v. Brandenburg, 83 N.J. 198, 207 (1980).

Here, consistent with well-settled case law, we are satisfied the judge did not err in establishing September 19, 2019 as the equitable distribution date.  Because plaintiff filed the divorce complaint, he controlled the date for determining equitable distribution.  Nothing precluded plaintiff from filing the complaint at the time the parties separated.

We next address whether the judge abused his discretion in awarding defendant one-half of the value of plaintiff's 403(b) account as of September 19, 2019.  We reject plaintiff's argument.

"A Family Part judge has broad discretion in . . . allocating assets subject to equitable distribution," Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012), and in determining the manner of distribution, Steneken v. Steneken, 356 N.J. Super. 427, 435 (App. Div. 2004), aff'd in part, modified in part on other grounds, 183 N.J. 290 (2005).  We will affirm an award of equitable distribution provided "the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000).

A-2943-21

In a divorce action, "the court may make such award or awards to the parties . . . to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage or civil union." N.J.S.A. 2A:34-23(h). We construe the statute to "recognize that marriage is 'a shared enterprise, a joint undertaking, that in many ways . . . is akin to a partnership.'" Weiss v. Weiss, 226 N.J. Super. 281, 287 (App. Div. 1988) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977)). "[T]he goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken, 183 N.J. at 299 (quoting Steneken, 367 N.J. Super. at 434).

It is presumed that "each party to a marriage . . . contributes to the enterprise that produces an accumulation of property." Perkins v. Perkins, 159 N.J. Super. 243, 247 (App. Div. 1978). "Although the acquisition of property may be traced more directly to one partner than another, the distribution should reflect non-pecuniary as well as pecuniary contributions to the marriage." Ibid.

"After a trial judge identifies the marital assets and determines the value of each asset, the judge must decide 'how such allocation can most equitably be made.'" M.G. v. S.M., 457 N.J. Super. 286, 294 (App. Div. 2018) (quoting Rothman v. Rothman, 65 N.J. 219, 232 (1974)). Because "equitable distribution

does not presume an equal distribution," id. at 295 (citing Rothman, 65 N.J. at 232 n. 6), a judge may not "mechanical[ly] divi[de]" the marital assets but must instead weigh "the many considerations and circumstances . . . presented in each case," id. at 294 (omission in original) (quoting Stout v. Stout, 155 N.J. Super. 196, 205 (App. Div. 1977), overruled on other grounds by Petersen v. Petersen, 85 N.J. 638, 643 n. 2 (1981)).

N.J.S.A. 2A:34-23.1 requires a court to consider the following factors when dividing the marital assets: the length of the marriage; the parties' age and health; the income or property each party brought to the marriage; the parties' standard of living during the marriage; the parties' income and earning capacities; each party's contribution to the other's earning power; each party's contribution to the acquisition of the marital property; the contribution of a party as a homemaker; and any other factors the court may deem relevant. As embodied by these statutory factors, the parties' contributions to the marriage are "not measurable only by the amount of money contributed," but also "[t]he nonremunerated efforts of raising children [and] making a home," whose "worth is . . . entitled to substantial recognition." Carr v. Carr, 120 N.J. 336, 347 (1990) (quoting Gibbons v. Gibbons, 174 N.J. Super. 107, 113 (App. Div. 1980), rev'd on other grounds, 86 N.J. 515, 525 (1981)).

Here, the judge recognized plaintiff provided significant financial contributions to the household during the marriage based on his employment. The judge also acknowledged defendant provided significant contributions to the household during the marriage as she took care of the marital home. Defendant also cared for the parties' children, and one child suffered significant disabilities. The judge found defendant's contributions to the household during the marriage allowed plaintiff to work, and to accumulate the assets in his 403(b) account.

Plaintiff asserts he made voluntary financial contributions to the household after the parties separated, and those contributions adversely affected his quality of life. However, as the judge properly recognized, plaintiff's departure adversely impacted defendant as well because she had to care for the children without plaintiff's participation. Moreover, although plaintiff contends defendant's irresponsible spending during the marriage "precluded [his] accumulation of wealth," plaintiff failed to present any evidence supporting this allegation. Based on the judge's application of the statutory factors under N.J.S.A. 2A:34-23.1, and consideration of defendant's nonpecuniary contributions to the household during the marriage, we are satisfied the judge did not abuse his discretion in distributing plaintiff's 403(b) account.

11

We next consider plaintiff's argument that the judge erred in ordering him to pay defendant's monthly electric, gas, cellular phone, and auto insurance expenses directly to the respective providers in lieu of ordering plaintiff's payment of child support for Matthew. We disagree.

A judge's "[child support] award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)).

N.J.S.A. 2A:34-23 provides: "[A]fter judgment of divorce . . . the court may make such order . . . as to the care, custody . . . , and maintenance of the children . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . ." A judge awarding child support must consider, in relevant part: the needs of the child; the child's income; and any other relevant factors. N.J.S.A. 2A:34-23(a). In computing child support for adult unemancipated children with "severe mental or physical" disabilities, the court shall also consider "the child's eligibility for public benefits and services for people with disabilities and may make such orders . . . as are necessary to promote the well-being of the child." Ibid.

Plaintiff argues his compelled payment of certain household bills impacting Matthew in lieu of child support improperly benefits defendant and the other adult residents of defendant's household–specifically, defendant's mother, defendant's sister, and Tyler. We disagree.

"[A] custodial parent cannot[,] through the guise of the incidental benefits of child support[,] gain a benefit beyond that which is merely incidental to a benefit being conferred on the child." Strahan v. Strahan, 402 N.J. Super. 298, 308 (App. Div. 2008) (alterations in original) (quoting Loro v. Del Colliano, 354 N.J. Super. 212, 225-26 (App. Div. 2002)). However, "[a] custodial parent's needs may not be entirely divorced from those of the child[]." Zazzo v. Zazzo, 245 N.J. Super. 124, 131 (App. Div. 1990) (citing Cooper v. Cooper, 99 N.J. 42 (1984)). "If there is some incidental benefit to the custodial parent from [a] component of child support, the law is not offended." Ibid.

Judges have broad discretion in awarding child support. J.B., 215 N.J. at 325-26. If there is satisfactory evidentiary support for the trial judges' findings, our "task is complete and [we] should not disturb the result." Beck v. Beck, 86 N.J. 480, 496 (1981). Moreover, Family Part judges possess broad equitable powers to accomplish substantial justice. Weitzman v. Weitzman, 228 N.J. Super. 346, 358 (App. Div. 1988).

We are satisfied the judge appropriately exercised his equitable powers in compelling plaintiff's payment of certain household expenses having an "impact" on Matthew in lieu of ordering plaintiff's payment of child support for Matthew. The judge calculated plaintiff's child support obligation for Matthew would be $658 per month. The judge found, and plaintiff did not dispute, Matthew's governmental benefits would terminate if plaintiff paid child support for Matthew. More importantly, there was no dispute Matthew would lose Medicaid insurance if he received child support.

To avoid termination of Matthew's receipt of governmental benefits, the judge ordered plaintiff to directly pay the providers for the family's monthly gas, electric, cellular phone, and auto insurance bills. These monthly bills were approximately equal to the amount of monthly child support calculated for Matthew. While other members of defendant's household may receive an incidental benefit resulting from plaintiff's payment of certain monthly household expenses in lieu of child support, the judge's remedy preserved Matthew's standard of living, especially his access to health insurance, and freed funds for defendant to contribute toward Matthew's financial needs. We are satisfied the judge's order equitably accomplishes the child support objectives identified in N.J.S.A. 2A:34-23(a) based on Matthew's unique circumstances.

A-2943-21

Therefore, we discern no abuse of discretion in the judge's fashioning of such a remedy.

We next consider plaintiff's argument that compelling his payment of certain monthly household bills in lieu of child support violates the Thirteenth Amendment to the United States Constitution. He contends such payments are "tantamount to 'involuntary servitude.'" We disagree.

Section 1 of the Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const., amend. XIII, § 1. The Amendment extends to "those forms of compulsory labor akin to . . . slavery which in practical operation would tend to produce like undesirable results." U.S. v. Kozminski, 487 U.S. 931, 942 (1988) (quoting Butler v. Perry, 240 U.S. 328, 332 (1916)).

However, "not all situations in which labor is compelled by . . . force of law violate the Thirteenth Amendment." Id. at 962. "[T]he prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties." Id. at 943-44 (citing Hurtado v. U.S., 410 U.S. 578, 589 n. 11 (1973)

15

(jury service); <u>Arver v. U.S.</u>, 245 U.S. 366, 390 (1918) (military service); <u>Butler</u>, 240 U.S. at 332-33 (roadwork)).

In <u>Moss v. Superior Court of Riverside County</u>, 950 P.2d 59, 67 (Cal. 1998), the California Supreme Court concluded that "[t]he obligation of a parent to support a child," which "'rests on fundamental natural laws" and "existed under common law," "is in no way comparable or akin to peonage or slavery." As the California Supreme Court explained:

> When . . . the person claiming involuntary servitude is simply expected to seek and accept employment, if available, and is free to choose the type of employment and the employer, and is also free to resign that employment if the conditions are unsatisfactory or to accept other employment, none of the aspects of "involuntary servitude" which invoke the need to apply a contextual approach to Thirteenth Amendment analysis are present. There is no "servitude" since the worker is not bound to any particular employer and has no restrictions on his freedom other than the need to comply with a lawful order to support a child. Working to earn money to support a child is not involuntary servitude any more than working in order to pay taxes. Failure to do either may subject one to civil and criminal penalties, but that compulsion or incentive to labor does not create a condition of involuntary servitude.
>
> [<u>Id.</u> at 72.]

Other courts have similarly "conclude[d] that child-support awards fall within that narrow class of obligations that may be enforced . . . without

16

violating the constitutional prohibition against slavery." U.S. v. Ballek, 170 F.3d 871, 874 (9th Cir. 1999); accord Child Support Enf't Agency v. Doe, 125 P.3d 461, 474 (Haw. 2005); Freeman v. Freeman, 397 A.2d 554, 557 n. 2 (D.C. Cir. 1979).

While we are not bound by case law from other jurisdictions, we may find the reasoning of those courts persuasive. See Lewis v. Harris, 188 N.J. 415, 436 (2006) (noting our courts are "not bound by . . . the precedents of other states, although they may provide guideposts and persuasive authority"). Based on the rationale expressed by the courts in the cases addressing the payment of child support and the Thirteenth Amendment, we are satisfied the judge's imposition of a financial obligation, compelling plaintiff's payment of certain household expenses impacting Matthew in lieu of the payment of child support, does not violate the Thirteenth Amendment. Plaintiff remains free to choose employment, resign employment, or seek a job change. Thus, we are satisfied the judge's order, compelling plaintiff's payment of defendant's monthly gas, electric, cellular phone, and auto insurance bills directly to the providers, did not violate plaintiff's Thirteenth Amendment rights.[4]

---

[4] In the event defendant's monthly expenses for gas, electric, cellular phone, and auto insurance substantially exceed the calculated monthly amount for

We next address defendant's cross-appeal. Defendant argues the judge erred in failing to decide her motion to compel plaintiff's payment of arrears for pendente lite ordered transportation expenses. As discussed, under a November 8, 2019 pendente lite order, plaintiff was required to pay defendant the sum of $278 per month for transportation expenses. At trial, plaintiff admitted he failed to pay all of the monthly transportation expenses under the pendente lite order. Nevertheless, the judge awarded a Mallamo credit to plaintiff for his payment of those expenses.

According to defendant, plaintiff still owed her $1,112, representing unpaid transportation expenses for the months of January through April 2022. As part of defendant's written summation at the conclusion of the divorce trial, defendant requested reimbursement of the $1,112 or, in the alternative, the amount of the unpaid transportation expenses to be applied against any Mallamo credit awarded to plaintiff. However, the judge never issued a decision regarding defendant's request.

We review a trial judge's adjustment to a pendente lite support award for abuse of discretion. Slutsky, 451 N.J. Super. at 368. Pendente lite support

Matthew's child support, plaintiff may file the appropriate application to modify this obligation. See N.J.S.A. 2A:34-23; Lepis v. Lepis, 83 N.J. 139, 157 (1980).

awards are subject to amendment after trial because they are typically established by the submission of certifications and without the benefit of a plenary hearing. N.J.S.A. 2A:34-23; Mallamo, 280 N.J. Super. at 11-12. Generally, "a judge will not receive a reasonably complete picture of the financial status of the parties until a full trial is conducted." Id. at 16.

Here, as part of the DJOD, the judge awarded a Mallamo credit to plaintiff for his payment of transportation expenses despite plaintiff's admission during trial that he failed to pay several months of those court-ordered expenses. Because plaintiff received credit for expenses he failed to pay, defendant is entitled to immediate reimbursement of the pendente lite transportation expenses for plaintiff's Mallamo credits to remain valid.

The judge never addressed defendant's request for reimbursement of the unpaid transportation expenses. Thus, we are constrained to remand to the Family Part to address the issue of plaintiff's unpaid transportation expenses from January 2022 through April 2022, and issue a decision on the merits, including, if appropriate, an adjustment to the award of Mallamo credits to plaintiff.

Affirmed as to the appeal. Remanded for further proceedings consistent with this opinion as to the cross-appeal. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

A-2943-21

CLERK OF THE APPELLATE DIVISION