Elmer H. HAIRSTON, Appellant,

v.

Mary W. HAIRSTON, Appellee.

Mary W. HAIRSTON, Appellant,

v.

Elmer H. HAIRSTON, Appellee.

Nos. 81–97, 81–98.

District of Columbia Court of Appeals.

Argued May 19, 1982.

Decided Jan. 12, 1983.

L. Mark Winston, Washington, D.C., with whom Stuart L. Bindeman, Washington, D.C., was on the briefs, for appellant in No. 81–97 and appellee in No. 81–98.

Vincent A. Jankoski, Washington, D.C., for appellee in No. 81–97 and appellant in No. 81–98.

Before NEBEKER, FERREN, and BELSON, Associate Judges.

BELSON, Associate Judge:

This case comes before us on cross-appeals from the trial court's order granting partition and sale of real property owned jointly by Elmer H. Hairston and Mary W. Hairston prior to their divorce. For convenience, we will refer to Elmer H. Hairston as appellant and Mary W. Hairston as appellee. Appellant asserts that the trial court erred in not awarding him a one-half interest in the property. Appellee contends that the trial court erred in ordering that the property be sold, instead of letting her purchase her former husband's share. We affirm.

I

The parties were married in 1943. In 1976, appellant filed for divorce from his wife in a North Carolina court. Although appellee was personally served and filed an answer, she was unable to attend the trial. The court granted appellant an absolute divorce and dismissed appellee's counterclaim for child support. Appellee did not appeal the North Carolina judgment.

1. See D.C.Code 1981, § 16–2901.

In 1979, appellant filed a complaint in Superior Court asking the court to partition and sell the house owned jointly by the parties and occupied by appellee and the parties' son.[1] Appellee filed an answer and counterclaimed for enforcement of a child support judgment rendered in her favor in April 1978.

The court, concluding that "it [had] no other recourse under the law," ordered that the property would be sold if the parties should prove unable to reach a mutually satisfactory buy-out agreement. Following several unsuccessful attempts by the parties to reach a satisfactory settlement, the court ordered that the house be sold. The court awarded appellee 83.01% of the sale proceeds and $6,200 plus accrued interest at 6% for the child support arrearages. Appellant was awarded 16.99% of the sale proceeds less the child support arrearages and interest. These cross-appeals followed.

II

Appellant asserts that the trial court erred in not awarding him a one-half interest in the property. The controlling statute is D.C.Code 1981, § 16–910(b) which provides that following the entry of a divorce decree, the court is to:

[D]istribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy by the entireties, in a manner that is equitable, just and reasonable, after considering all relevant factors including, but not limited to: the duration of the marriage, any prior marriage of either party, the age, health, occupation, amount and sources of income, vocational skills, employability, assets, debts, and needs of each of the parties, provisions for the custody of minor children, whether the distribution is in lieu of or in addition to maintenance, and the opportunity of each for future acquisition of assets and income. The court shall also consider each party's contribution to the acquisition, preservation,

appreciation, dissipation or depreciation in value of the assets subject to distribution under this subsection, and each party's contribution as a homemaker or to the family unit.

The statute gives the trial court broad discretion in distributing property accumulated during marriage pursuant to § 16–910(b). *Murville v. Murville,* D.C.App., 433 A.2d 1106, 1109 (1981); *Turpin v. Turpin,* D.C.App., 403 A.2d 1144, 1146–47 (1979); *see also King v. King,* D.C.App., 286 A.2d 234, 237 (1972); *Mumma v. Mumma,* D.C. App., 280 A.2d 73, 75 (1971).[2]

Appellant asks that the North Carolina divorce decree be accorded full faith and credit. He argues that it is an adjudication that he faithfully performed his marital vows and that, consequently, pursuant to *Sebold v. Sebold,* 143 U.S.App.D.C. 406, 444 F.2d 864 (1971), he is entitled to one-half of the proceeds from the sale of the house. We conclude, to the contrary, that even if appellant had established that the North Carolina judgment was an adjudication of faithful performance of marriage vows, a question we do not reach on this record, he would not necessarily be entitled to the one-half share he seeks since the holding of *Sebold* has been abrogated by the District of Columbia Marriage and Divorce Act, D.C. Law 1–107, April 7, 1977, which amended § 16–910 to read in pertinent part as it is set forth above. In view of that conclusion, and since the matter of the disposition of marital property was not before the North Carolina court, there is no aspect of the North Carolina judgment of divorce that commands full faith and credit in this action.

In *Sebold,* the husband sued in Maryland for an absolute divorce and the wife counterclaimed on the ground of constructive desertion. *Id.* at 409, 444 F.2d at 867. The Maryland court dismissed the husband's complaint and granted the wife a divorce on the ground of constructive desertion. The husband then filed suit in United States District Court for the District of Columbia seeking to have title to District of Columbia properties held jointly by the parties placed solely in his name. The District Court awarded all but one of the properties to the husband. *Id.*

On appeal, however, the United States Court of Appeals for the District of Columbia Circuit held that the wife was entitled to the award of an equal share of the properties. *Id.* at 415, 444 F.2d at 873. Noting that the husband's suit for divorce was dismissed and that Maryland law, under which the wife was awarded a divorce, recognized the doctrine of recrimination, the court held that the Maryland divorce decree was conclusive of the fact that the wife had faithfully executed her marriage vows and, consequently, was entitled to an equal share of the properties upon their division. *Id.*

*Sebold,* however, insofar as it suggests that faithful performance of marriage vows may require an even division of property accumulated during the marriage, no longer has precedential value. In 1977, § 16–910 was amended by the District of Columbia Marriage and Divorce Act, D.C. Law 1–107, April 7, 1977. Section 16–910, as it existed at the time of the *Sebold* decision, authorized the trial court to "award the property to the one lawfully entitled thereto or [to] apportion it in such manner as [seemed] equitable, just, and reasonable." D.C.Code 1967, § 16–910. Under amended § 16–910, it has been made abundantly clear that the trial court is not controlled by any single factor (such as faithful performance of marriage vows, as appellant advocates) in making its property distribution. Rather, the trial court is to distribute such property upon consideration of "all relevant factors including, but not limited to" the large number of factors specified in the statutory language quoted above. The amendment to § 16–910 was adopted in 1977 and was applicable to this 1979 partition action. Thus

---

2. It applies in actions for partition brought after the parties were divorced pursuant to a foreign decree of divorce as well as to divorce actions brought in the Family Division of the Superior Court. *Sebold v. Sebold,* 143 U.S. App.D.C. 406, 444 F.2d 864 (1971).

the trial judge hearing this action was vested with the broad discretion conferred by the amended § 16–910.

In *Turpin v. Turpin, supra,* we discussed the relationship between subsections (a) and (b) of § 16–910 and the manner in which they differed from the predecessor statute, D.C.Code 1967, § 16–910, which was applied in *Sebold.* We held that "the trial court's discretion under the new statute is at least as broad as it was under the old." *Id.* 403 A.2d at 1147. Focusing on *Sebold's* suggestion that a spouse may be entitled to an even division of property by reason of faithful performance of marriage vows, it is our view that the amended statute makes it crystal clear that the trial judge's broad discretion is unbounded by a rule that that single factor may give a former spouse an entitlement to an even division.

We add that even if the law as expressed in *Sebold* had not been modified by statute, *Sebold* would not necessarily have required the result appellant seeks. In *Sebold,* the United States Court of Appeals stated:

> That equal shares are here required, however, does not mean that they are always required. Special equities may sometimes vary the share to be received by a party when a tenancy in common derived from a tenancy by the entirety is partitioned. [Citations omitted. *Sebold, supra* 143 U.S.App.D.C. at 415 n. 16, 444 F.2d at 873 n. 16.]

Thus, the trial judge in this case remained free, upon consideration of all the equities, to depart from an even division of property subject to distribution under § 16–910(b). *See King, supra.*

We have not yet addressed here the question whether faithful performance of marriage vows remains one of the factors the trial court can consider along with those set forth explicitly in § 16–910(b). Since the statutory listing is not exclusive, we see no reason why that factor should not be considered.[3] That conclusion returns us to appellant's contention that it was inappropriate for the court to go behind the North Carolina decree to examine whether appellant faithfully performed his marriage vows. Appellant emphasizes the undesirability of turning every action for partition following a divorce into "a contest of who can dredge up the most evidence of inappropriate behavior" on the part of the other spouse.

Appellant's argument cannot succeed in this appeal, for there is nothing of record before us that indicates the extent, if any, to which such matters were developed during trial. *D.C. Transit System, Inc. v. Milton,* D.C.App., 250 A.2d 549, 550 (1969). Nor is there anything that suggests that the trial judge gave any particular weight to that factor in determining the respective shares of the parties.[4]

We conclude that the trial court did not abuse its discretion in declining to award appellant an equal share of the proceeds of the sale of the house.

### III

Appellee contends that the trial court erred in ordering that the property be sold.[5] The trial court held that it had no power under the law to order a forced buyout. Under D.C.Code 1981, § 16–2901,

---

**3.** Our conclusion is aided by the amended statute's inclusion of "each party's contribution as a homemaker or to the family unit" as a factor.

**4.** As to the danger that actions for partition between former spouses will be burdened by the type of contest appellant describes, it appears doubtful that such will be the case since, as we hold here, faithful performance of marriage vows is but one of numerous factors that a judge may consider. It no longer can be argued that it entitles a spouse automatically to a one-half share of the property subject to the

provisions of § 16–910(b). In short, it is not so weighty a factor as to justify extended development. A trial judge, in the exercise of discretion, of course, may impose reasonable limitations upon the presentation of such evidence.

**5.** Appellee also argues that the interest on the child support payments should have been computed from the date of the foreign child support judgment rather than from the date of the partition of the property rights. Finding no abuse of discretion, we affirm this portion of the judgment.

"when it appears that [property held by tenancy in common] can not be divided without loss or injury to the parties interested, the court may decree a sale thereof and a division of the money arising from the sale among the parties, according to their respective rights." Nothing in the language of the statute authorizes the court to order the sale of the interest of one tenant in common to the other.[6] Accordingly, the judgment of the trial court is

*Affirmed.*

6. Appellee, of course, can bid for the property upon judicial sale. If she purchases, she will pay 16.99% of the price set by action of the market, the fairest available means for determining value. Child support arrearages and interest will be deducted from the amount she is required to pay.