629 A.2d 70

**Herman ALSTON**

v.

**Viola ALSTON.**

**No. 3, Sept. Term, 1991.**

Court of Appeals of Maryland.

July 23, 1993.

Reconsideration Denied Sept. 13, 1993.

---

**498**

Ann M. Turnbull, Turnbull, Wase & Lyons, P.A., (both on brief), Towson, for petitioner.

William D. Berwick (George W. White, Jr., White, Mindel, Clarke & Foard, all on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ELDRIDGE, Judge.

The issue before us concerns the propriety of a marital property monetary award granted in a divorce proceeding. The General Assembly has enacted a statutory scheme relating to property matters upon divorce, Maryland Code (1984, 1991 Repl.Vol.), §§ 8–201 to 8–205 of the Family Law Article. Pursuant to these provisions, the mechanism by which the spouses' property interests in "marital property" are to be adjusted is the "monetary award." [1] Generally, the trial court

---

1. The pertinent statute for purposes of this case is Maryland Code (1984, 1991 Repl.Vol.), § 8–205 of the Family Law Article, first enacted by Ch. 794 of the Acts of 1978, which states as follows:

does not transfer ownership of any particular piece of property,[2] but instead undertakes a three-step process which may culminate in a monetary award. First, the trial court must determine which property is "marital property" subject to allocation, §§ 8–203 and 8–205(a). Next, the court must determine the value of the marital property, §§ 8–204 and 8–

"(a) *Grant of award.*—Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, the court may transfer ownership of an interest in a pension, retirement, profit sharing, or deferred compensation plan from 1 party to either or both parties, grant a monetary award, or both, as an adjustment of the equities and rights of the parties concerning marital property, whether or not alimony is awarded.

"(b) *Factors in determining amount and method of payment or terms of transfer.*—The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both, after considering each of the following factors:

(1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(2) the value of all property interests of each party;

(3) the economic circumstances of each party at the time the award is to be made;

(4) the circumstances that contributed to the estrangement of the parties;

(5) the duration of the marriage;

(6) the age of each party;

(7) the physical and mental condition of each party;

(8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

(9) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

"(c) *Award reduced to judgment.*—The court may reduce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing."

2. The exceptions to this rule are that a court may transfer interests in pension, retirement, profit sharing, or deferred compensation plans. § 8–205(a) of the Family Law Article.

205(a). Finally, the court must consider various factors before fashioning any award, §§ 8–205(a) and (b). For more detailed discussions of the Maryland marital property and monetary award scheme, *see, e.g., Pope v. Pope,* 322 Md. 277, 587 A.2d 481 (1991); *Herget v. Herget,* 319 Md. 466, 573 A.2d 798 (1990); *Zandford v. Wiens,* 314 Md. 102, 549 A.2d 13 (1988); *Niroo v. Niroo,* 313 Md. 226, 545 A.2d 35 (1988); *Grant v. Zich,* 300 Md. 256, 477 A.2d 1163 (1984); *Harper v. Harper,* 294 Md. 54, 448 A.2d 916 (1982); *Deering v. Deering,* 292 Md. 115, 437 A.2d 883 (1981); John F. Fader, II and Richard J. Gilbert, *Maryland Family Law,* Chapter 17 (1990, 1991 Supp.); Paula Peters, *Property Disposition Upon Divorce in Maryland: An Overview of the New Statute,* 8 U.Balt.Law Rev. 377 (1979); Lawrence J. Golden, *Equitable Distribution of Property,* § 8.04 "Monetary Awards" (1983, 1992 Cum. Supp.).

We shall conclude in this case that the trial court erred when it awarded to the wife half of the value of a specific piece of marital property.

## I.

The relevant facts are as follows. Viola and Herman Alston were married in June 1964, and they separated in 1985. In late 1987, Mrs. Alston filed in the Circuit Court for Baltimore City a complaint for divorce, based on the couple's voluntary separation for over one year. She did not seek alimony or a marital property award. Mr. Alston was served and notified that if he did not file a response within thirty days a divorce could be granted against him, but he did not file any response. After the thirty days expired, he assumed that the divorce had been granted.

At the time the above-mentioned divorce action was filed, Mrs. Alston was employed as a clerk with the Federal Government, earning a salary of about $19,000 per year. Through this employment, she had accrued pension rights worth approximately $22,000. She owned a car worth about $1,000, and some furniture worth about $2,000. She had savings

accounts worth $1,000. Mrs. Alston's net worth was, therefore, approximately $26,000.

When the Baltimore City divorce action was filed, Mr. Alston was employed as a prison guard by the Department of Corrections in Washington, D.C., earning a salary of $29,500 per year. His government pension, accrued through his years of military service and employment with the Department of Corrections, was worth approximately $17,000. He owned a car, and about $8,000 worth of furniture. His net worth was approximately $25,000, plus the value of his car.

Several days before the expiration of the thirty day period for filing an answer to Mrs. Alston's divorce complaint, Mr. Alston won the District of Columbia "Lotto," which had an annuity value of over one million dollars.[3] Mrs. Alston immediately dismissed her divorce petition in the Circuit Court for Baltimore City. Approximately six months later, she filed in the Circuit Court for Baltimore County a complaint for absolute divorce on the ground of adultery, seeking, *inter alia,* a monetary award representing a substantial interest in Mr. Alston's lottery annuity.[4]

Mr. Alston filed a motion to dismiss and an answer to Mrs. Alston's complaint. He also filed a "Counter Complaint for Absolute Divorce," seeking a divorce from Mrs. Alston on the grounds of adultery, desertion, and cruelty. The circuit court denied Mr. Alston's motion to dismiss.

---

**3.** The lottery winnings were to be paid as an annuity of $55,000 per year over twenty years. Approximately eleven thousand dollars were withheld by the payor for income taxes, so Mr. Alston was to receive a check for about $44,000 each November for twenty years.

**4.** More specifically, Mrs. Alston sought permanent alimony, a valuation of the parties' marital property and a monetary award adjusting the parties' marital property rights, at least a one-half interest in Mr. Alston's yearly annuity, a determination of the ownership of all of the couple's real and personal property, attorneys' fees and costs, and "such other and further relief" as required.

Mrs. Alston also alleged that she and Mr. Alston had cohabited briefly during March 1988, thereby abandoning any claim for a no-fault divorce on the ground of voluntary separation for over one year.

During the trial, both parties agreed that the annuity was technically marital property because it was acquired before the expiration of the marriage. Although the parties disputed the present value of the annuity, the parties' arguments centered on the appropriateness of a monetary award. Mrs. Alston argued that, considering all the statutory factors, she was entitled to a monetary award of half or some other substantial portion of the annuity. Specifically, she contended that she had made substantially greater contributions to the well-being of the family, and that, therefore, the first statutory factor set forth in § 8–205(b) of the Family Law Article weighed against Mr. Alston. She also argued, among other things, that Mr. Alston's ongoing adultery caused the estrangement of the parties, so the fourth factor weighed in her favor.

Mr. Alston argued that Mrs. Alston was not entitled to any monetary award. Mr. Alston asserted that Mrs. Alston had not made significant contributions, economic or non-economic, to the well-being of the family. He contended that he was in dire economic straits at the time of trial, and, consequently, the third statutory factor in § 8–205(b) militated against a monetary award.[5] He stated that the estrangement of the parties was caused by Mrs. Alston's desertion and thus the fourth statutory factor indicated that no monetary award be made. Mr. Alston relied heavily on the eighth factor delineated in § 8–205(b), which requires the judge to consider how and when specific marital property was acquired. Finally, Mr. Alston pointed to the tenth "catch-all" factor, under which the judge may consider other necessary or appropriate elements. He argued that the situation before the court was unique, in that the asset was not acquired through the parties' joint efforts to provide for their future together.

---

5. After winning the lotto, Mr. Alston quit his job, bought a new Lincoln Town Car, a condominium in Laurel, Maryland, and an interest in a time share unit in Virginia. He financed all of these purchases at high rates of interest, and made minimal downpayments, so that his debt burden significantly exceeds his equity in his purchases.

On November 15, 1989, the circuit court entered a judgment of absolute divorce in favor of Mrs. Alston on the ground of Mr. Alston's adultery. The court denied alimony to either party. The court then valued all of the Alstons' marital property, including the lottery annuity. The court found that Mr. Alston had title to marital assets with a present value of $479,695.85, and that Mrs. Alston held title to assets worth $26,889.09. The court discussed the ten factors set forth in § 8–205(b) of the Family Law Article, treating each of them as entitled to equal weight. Noting the disparity of $452,806.76 in marital assets, the court made a monetary award to Mrs. Alston of fifty percent of the yearly net distribution on the annuity.[6]

Mr. Alston, aggrieved by the circuit court's grant of an absolute divorce to Mrs. Alston on the ground of adultery, and

---

**6.** With regard to the factors argued by the parties, the trial judge stated:
"... with respect to the first factor, the contribution of each to the marriage, the court finds that the monetary contributions were fairly equal. However, on the non-monetary side, the court is convinced from the evidence that the wife's contribution significantly exceeds that of the husband.

\* \* \* \* \* \*

"The third factor, the economic circumstances of each, of course, again, the husband's annuity contract. In addition, the court took into consideration the fact that the husband is now in debt, notwithstanding the fact that his income significantly increased as a result of the receipt of the annuity contract. He has no job at the present time, although there isn't anything that should prevent him from working and earning money should he choose to do that.

"Considering also the circumstances leading up to the estrangement, first of all, there is the adultery, which is really uncontroverted. And the court is convinced that that is something that is not limited to one or two instances, but is a general pattern on the husband's part. In addition, the court is convinced that there was an attitude on Mr. Alston's part in general of marital malaise, for want of a better comment.

\* \* \* \* \* \*

"Mr. Alston argues the eighth factor, how the marital property was acquired, is of great significance. Of course, the court also considered in regard to that the effort put into it. The only difference being that Mr. Alston took the time and effort and money, whatever it cost, to purchase the lottery ticket. Beyond that, there isn't much to say in his favor with regard to that."

by the court's decision to award half of his lottery winnings to Mrs. Alston, took an appeal to the Court of Special Appeals. The intermediate appellate court affirmed the circuit court's judgment, *Alston v. Alston,* 85 Md.App. 176, 582 A.2d 574 (1990). With regard to the circuit court's determination of a marital property monetary award, the Court of Special Appeals reviewed all of the statutory factors in sequence, as had the trial judge. As to the eighth factor set forth in § 8–205, namely "how and when specific marital property ... was acquired, including the effort expended by each party in accumulating the marital property," the Court of Special Appeals stated (85 Md.App. at 188–189, 582 A.2d at 580):

> "When the parties correctly conceded that the D.C. Lotto annuity was marital property, the court could not find it to be individual property and thus the method of acquisition, which would have controlled under a § 8–203(a) distribution, became merely one factor among ten statutory factors, with its weight to be determined by the court as the trier of fact."

Thereafter, we granted Mr. Alston's petition for a writ of certiorari which was limited to the marital property issue, 322 Md. 333, 587 A.2d 510 (1991).

## II.

■ The decision whether to grant a monetary award is generally within the sound discretion of the trial court. *See* § 8–205(a) ("the court *may* ... grant a monetary award") (emphasis added). *See also Niroo v. Niroo, supra,* 313 Md. at 230–231, 545 A.2d at 37; *Deering v. Deering, supra,* 292 Md. at 131, 437 A.2d at 891; *Ward v. Ward,* 52 Md.App. 336, 339 n. 3, 449 A.2d 443, 446 n. 3 (1982). Nevertheless, even with respect to a discretionary matter, a trial court must exercise its discretion in accordance with correct legal standards. *See, e.g., Bohnert v. State,* 312 Md. 266, 275, 539 A.2d 657, 661 (1988); *Colter v. State,* 297 Md. 423, 426–430, 466 A.2d 1286, 1288–1290 (1983); *Kemp v. Kemp,* 287 Md. 165, 170, 411 A.2d 1028, 1031–1032 (1980); *Radman v. Harold,* 279 Md. 167, 173, 367 A.2d 472, 476 (1977).

■ Mr. Alston's Lotto annuity has correctly been classified as marital property.[7] Before 1979 in Maryland, disposing, upon divorce, of property acquired during the marriage generally involved a determination of which party was the owner of a particular asset. Once ownership was determined, the court awarded the property to its owner, or, if the property was held jointly, to both parties equally. This system led to substantial inequity in many cases, because a spouse whose efforts assisted the other spouse in the latter's acquisition of assets generally had no legally cognizable property interest in those assets.[8]

To address this and other family law problems, the Governor in 1976 appointed a commission which, after study, recommended, *inter alia,* an entirely new system of "equitable distribution." In discussing why it believed that the title system ought to be modified, the Commission stated (Report of the Governor's Commission on Domestic Relations Law, at 3 (Jan. 1978) (often referred to as the Groner Commission Report, after its presiding officer)):

"The Commission does not believe that the people of Maryland today hold the view that a spouse whose activities within the marriage do not include the production of income has 'never contributed anything toward the purchase of' property acquired by either or both spouses during the marriage. Its members believe that non-monetary contri-

---

**7.** Marital property is "property, however titled, acquired by 1 or both parties during the marriage." § 8–201(e)(1) of the Family Law Article. Because the Alstons were not divorced *a vinculo matrimonii* until after Mr. Alston won the Lotto, Mr. Alston's winnings were acquired "during the marriage." *See Altman v. Altman,* 282 Md. 483, 490, 386 A.2d 766, 770 (1978), and cases there cited.

**8.** *See Gebhard v. Gebhard,* 253 Md. 125, 252 A.2d 171 (1969), in which this Court held that the trial court did not have the power to award a portion of certain property to a wife who maintained the home, worked in the husband's business and contributed substantially to the husband's ability to earn income, but, in the Court's view, " 'never contributed anything toward the purchase of the husband's property.' " 253 Md. at 130, 252 A.2d at 173–174, *quoting Lopez v. Lopez,* 206 Md. 509, 518, 112 A.2d 466, 470 (1955).

butions within a marriage are real and should be recognized in the event that the marriage is dissolved or annulled. As homemaker and parent and housewife and handyman (of either sex), as a man and a woman having equal rights under the law united into one family unit, in which each owes a duty to contribute his or her best efforts to the marriage, the undertakings of each are for the benefit of the family unit. In most cases, each spouse makes a contribution entitled to recognition, even though the standards or methods of quantifying a spouse's non-monetary contribution are inexact."

Consequently, the Commission was particularly concerned with giving recognition to the non-monetary contribution of one spouse with regard to the acquisition of property by either or both spouses during the marriage.

The General Assembly followed the Commission's proposal and enacted the equitable distribution statute. Ch. 794 of the Acts of 1978. In doing so, the Legislature, in the title to Ch. 794, set forth the State's policy that "when a marriage is dissolved the property interests of the spouses should be adjusted fairly and equitably, with careful consideration being given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family." At the same time, the General Assembly expressed its concern that the courts make equitable, as opposed to presumptively equal, property divisions. *See Laws of Maryland 1978,* Ch. 794, at 2308 (deleting the language "A monetary award shall be presumptively such as is necessary to divide the value of the marital property equally between the parties. The court may adjust the division of the value of the marital property on a basis other than equal after considering" several factors).

It is important that courts not lose sight of this history and purpose when making decisions about marital property. The "function [of the monetary award] is to provide a means for the adjustment of inequities that may result from distribution of certain property in accordance with the dictates of title." *Herget v. Herget, supra,* 319 Md. at 471, 573 A.2d at 800. The history of the statute indicates that the General Assembly was

primarily concerned with achieving equity by reflecting non-monetary contributions to the acquisition of marital assets, and this principle should be a major consideration in a trial judge's analysis.

■ The statutory factors listed in § 8–205(b) are not prioritized in any way, nor has the General Assembly mandated any particular weighing or balancing of the factors. The application and weighing of the factors is left to the discretion of the trial court. Nevertheless, in light of the history and purpose of the statute, the eighth factor, relating to "how and when specific marital property" was acquired and the contribution that each party made toward its acquisition, should be given considerable weight. The circuit court and the Court of Special Appeals indicated that the eighth factor should not be given any more weight than any other factor in this case. Under the particular circumstances here, however, such approach was not consistent with the statute.

■ While no hard and fast rule can be laid down, and while each case must depend upon its own circumstances to insure that equity be accomplished, generally in a case such as this the eighth factor should be given greater weight than the others. Where one party, wholly through his or her own efforts, and without any direct or indirect contribution by the other, acquires a specific item of marital property after the parties have separated and after the marital family has, as a practical matter, ceased to exist, a monetary award representing an equal division of that particular property would not ordinarily be consonant with the history and purpose of the statute.

The trial judge found that the annuity was acquired because Mr. Alston "took the time and effort and money, whatever it cost, to purchase the lottery ticket." While the amount of effort itself may not have been great, the annuity was acquired entirely through Mr. Alston's efforts. This is not a case in which one party has facilitated the other's acquisition of

property, directly or indirectly.[9] Mr. Alston, using his own funds, purchased the ticket and won the Lotto. This event was not dependent in any way on the parties' joint efforts or shared life, past or present. At the time, the marriage was, for all practical purposes, over.

█ In this case, as in many other cases, once property was determined to be "marital," the circuit court may have succumbed to the temptation to divide the property equally. As previously discussed, our statute requires "equitable" division of marital property, not "equal" division. The Maryland Legislature specifically rejected the notion that marital property should presumptively be divided equally.[10] In Maryland, as in the majority of equitable distribution states, "equitable" does not necessarily mean "equal." *Deering v. Deering, supra,* 292 Md. at 130, 437 A.2d at 892 ("we point out that section 3–6A–

---

9. In keeping with the broad remedial purpose of the marital property statute, we recognize that indirect efforts toward the acquisition of assets are important and entitled to weight. *See generally,* Lawrence J. Golden, *Equitable Distribution of Property,* § 8.18 "Contribution to Acquisition, Maintenance, and Preservation of Property" (1983, 1992 Cum.Supp.).

10. In "community property" states, of course, marital property is divided equally between the wife and husband upon divorce, with some states also allowing equitable considerations to modify this division. *See generally,* W. DeFuniak and M. Vaughn, *Principles of Community Property* (2d ed. 1971); S. Greene, *Comparison of the Property Aspects of the Community Property and Common–Law Marital Property Systems,* 13 Creighton L.Rev. 71 (1979).

Some states which have adopted equitable distribution schemes have created a statutory presumption in favor of equal distribution. *See, e.g.,* Ark.Code Ann. (1987, 1991 Repl.Vol.) § 9–12–315(a)(1) ("All marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable"); N.C.Gen. Stat. (1992) § 50–20(c); Oregon Revised Stat. (1991) § 107.105(1)(f); W.Va.Code Ann. (1966, 1992 Repl.Vol.) § 48–2–32(a); Wis.Stat.Ann. (1981) § 767.255. *See also Salisbury v. Salisbury,* 657 S.W.2d 761, 770 (Tenn.Ct.App.1983) (adopting a presumption of equal division as a matter of statutory interpretation). Other states have adopted equal division as a less formal "starting point" for equitable distribution. *See LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986); *Wanberg v. Wanberg,* 664 P.2d 568, 575 (Alaska 1983); *Cherry v. Cherry,* 66 Ohio St.2d 348, 355, 421 N.E.2d 1293, 1298–1299 (1981).

05 [now §§ 8–203 to 8–205] does not require an equal division of marital property"); *Ohm v. Ohm*, 49 Md.App. 392, 405, 431 A.2d 1371, 1378 (1981).[11]

In making a marital property monetary award, a trial judge must weigh the relevant factors in light of the legislative purpose, and then use his or her sound discretion to arrive at an award that is equitable and in accordance with the statute. Of course, equal distribution may often be proper, and where that result is equitable and consistent with the legislative purpose, a court should not hesitate to make such an award. Each divorce situation is different, and must be evaluated individually. In light of the peculiar circumstances of this case, however, the trial judge erred in awarding half of the Lotto annuity to Mrs. Alston. Moreover, the record before us contains no evidence which would justify awarding any portion of the annuity to Mrs. Alston.

Consequently, the portion of the trial court's judgment relating to the marital property monetary award must be reversed. Because of the relationship between a marital property monetary award and alimony, however, we shall remand the case so that the trial court may redetermine the matter of alimony. *See McAlear v. McAlear*, 298 Md. 320, 469 A.2d 1256 (1984).[12]

---

11. *See, e.g., Hairston v. Hairston,* 454 A.2d 1369 (D.C.1983); *Miller v. Miller,* 84 Ill.App.3d 931, 40 Ill.Dec. 7, 405 N.E.2d 1099 (1980); *Libunao v. Libunao,* 180 Ind.App. 242, 388 N.E.2d 574 (1979); *In re Marriage of Castle,* 312 N.W.2d 147, 149 (Iowa 1981); *In re Marriage of Fehr,* 573 S.W.2d 695, 697 (Mo.Ct.App.1978); *Rothman v. Rothman,* 65 N.J. 219, 320 A.2d 496 (1974); *Arvantides v. Arvantides,* 64 N.Y.2d 1033, 1034, 489 N.Y.S.2d 58, 59, 478 N.E.2d 199, 200 (1985); *Murff v. Murff,* 615 S.W.2d 696 (Tex.1981); *Papuchis v. Papuchis,* 2 Va.App. 130, 132, 341 S.E.2d 829, 831 (1986); *Lacey v. Lacey,* 45 Wis.2d 378, 382, 173 N.W.2d 142, 145 (1970); *Cross v. Cross,* 586 P.2d 547, 549 (Wyo.1978).

12. In *McAlear,* Judge Davidson for the Court stated (298 Md. at 347, 469 A.2d at 1270);

"We recognize ... that there is an interrelationship between a monetary award ... and an award of alimony.... A monetary award, particularly one required to be paid in installments, resembles

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM IN PART AND REVERSE IN PART THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE EQUALLY DIVIDED.

Dissenting Opinion by ROBERT M. BELL, J.

ROBERT M. BELL, dissenting.

I dissent.

The majority holds that,

Where one party, wholly through his or her own efforts, and without and direct or indirect contribution by the other, acquires a specific item of martial property after the parties have separated and after the marital family, as a practical matter, ceased to exist, a monetary award representing an equal division of that particular property would not ordinarily be consonant with the history of the purpose of the statute.

Op. at 507. The majority seeks to achieve a result that it believes is just and fair. Unable, under the existing ruling, to avoid what it considers a harsh result in this very difficult

---

an award of alimony that requires periodic payments for a definite period of time. Moreover, in determining the amount of either a monetary award or alimony, equity courts are required to consider similar factors, such as the value of all property interests of the spouses, the contributions—monetary and nonmonetary—of the spouses, the economic circumstances of the spouses at the time of the award, the facts and circumstances that contributed to the estrangement of the spouses, and the duration of the marriage. Additionally, in determining the amount of a monetary award, equity courts must consider any award of alimony, while in determining the amount of alimony, equity courts must consider any monetary award."

See also *Deering v. Deering*, 292 Md. 115, 131, 437 A.2d 883, 892 (1981).

case—it has been observed that hard cases make bad law, *Fed. Communication Comm'n v. WOKO, Inc.*, 329 U.S. 223, 229, 67 S.Ct. 213, 216, 91 L.Ed. 204, 209 (1946); *Northern Sec. Co. v. United States*, 193 U.S. 197, 400–401, 24 S.Ct. 436, 468, 48 L.Ed. 679, 712 (1904) (Holmes, J. dissenting); *Citaramanis v. Hallowell*, 328 Md. 142, 177, 613 A.2d 964, 981 (1992) (Bell, J. dissenting)—the majority simply changes the rules of the game. It puts a gloss on marital property, which, in turn, impacts how marital property is distributed, as well as judicial review of monetary awards. Heretofore, once property, whether acquired before or after separation, was determined to be marital property, the decision to make a monetary award, either as a percentage of the property or in a lump sum amount, was entrusted to the sound discretion of the chancellor, exercised after considering the factors enumerated in Maryland Code (1984, 1991 Repl.Vol.) § 8–205(b) of the Family Law Article,[1] and "in accordance with correct legal standards." Op. at 504.

---

1.  Section 8–205(b) provides:

    *(b) Factors in determining amount and method of payment or terms of transfer.*—The court shall determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both, after considering each of the following factors:
    
    (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

    (2) the value of all property interest of each party;

    (3) the economic circumstances of each party at the time the award is to be made;

    (4) the circumstances that contributed to the estrangement of the parties;

    (5) the duration of the marriage;

    (6) the age of each party;

    (7) the physical and mental condition of each party;

    (8) how and when specific marital property or interest in the pension, retirement, profit sharing, or deferred compensation plan, was acquired, including the effort expended by each party in accumulating the marital property or the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both;

    (9) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home;

## I.

We have held that "when a monetary award is at issue, the court is permitted to effectuate a realignment of assets via a three-step process." *Zandford v. Wiens,* 314 Md. 102, 106, 549 A.2d 13, 15 (1988); *Niroo v. Niroo,* 313 Md. 226, 231, 545 A.2d 35, 37–38 (1988). The first step requires the court to determine which of the parties' property is marital property. § 8–203(a). Under the second, the court has to value that property. § 8–204. Finally, the court must decide whether to make a monetary award as an adjustment of the parties' equities and rights. § 8–205(a); *Zandford,* 314 Md. at 106, 549 A.2d at 15. The chancellor is not obliged to make a monetary award and, if one is made, he or she need not equally divide the property. *Deering v. Deering,* 292 Md. 115, 203, 437 A.2d 883, 892 (1981); *Ohm v. Ohm,* 49 Md.App. 392, 405, 431 A.2d 1371, 1378 (1981). If an award is deemed appropriate, before the court may make it, it must consider each of the ten factors enumerated in section 8–205. *Id.* 314 Md. at 106–07 n. 5, 549 A.2d at 15 n. 5; *Harper v. Harper,* 294 Md. 54, 79, 448 A.2d 916, 929 (1982).

The trial court found that the lotto winnings were marital property, *i.e.,* "property ... acquired by 1 or both parties during the marriage." § 8–201(e)(1). *See also Pope v. Pope,* 322 Md. 277, 279, 587 A.2d 481, 482 (1991); *Niroo,* 313 Md. at 228, 545 A.2d at 36; *Queen v. Queen,* 308 Md. 574, 575, 521 A.2d 320, 321 (1987); *Archer v. Archer,* 303 Md. 347, 349, 493 A.2d 1074, 1075 (1985).[2] The majority concedes that point; it

---

(10) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

**2.** The husband maintains that, like damage awards for personal injury, gifts and inheritances, the lotto winnings were totally unrelated to the efforts of either party and entirely fortuitous. Thus, he argues, the chancellor's failure to adequately consider the eighth factor was an abuse of discretion. In order to recover damages in a personal injury case, for example, the plaintiff must, in fact, have been injured; therefore, the claim is uniquely personal to the claimant, the injured party. Entitlement to damages for the injury does not directly affect, nor is it

acknowledges that, when the lotto jackpot is hit before the termination of the marriage, lotto winnings are marital property.[3] *See Archer,* 303 Md. at 350, 493 A.2d at 1076. Having considered all the factors, a point no one disputes, the chancellor found that the respondent was entitled to a monetary award. He set the appropriate award, again, in light of the required factors, at one-half the lotto winnings. On the other hand, the chancellor could have determined, upon consideration of the factors, that no monetary award should be made, in which event, the respondent would not be entitled to any of the lotto winnings.

After today, the chancellor's discretion to make monetary awards is significantly curtailed when the marital property is

---

dependent upon, the efforts of the other spouse. *See Unkle v. Unkle,* 305 Md. 587, 505 A.2d 849 (1986). Lotto winnings do not share that attribute; they are quite different. *See In re: Marriage of Mahaffey,* 206 Ill.App.3d 859, 151 Ill.Dec. 638, 643, 564 N.E.2d 1300, 1305 (1990) (Lottery winnings were presumptively marital property because where it was undisputed that money used to purchase winning lottery ticket came from earnings of either husband or wife, purchase of ticket occurred during the marriage and the irrevocable right to receive lottery payments was established during marriage); *Smith v. Smith,* 162 A.D.2d 346, 557 N.Y.S.2d 22, 23 (1990) (Lottery winnings were marital property even though they were acquired by husband's efforts and husband was not entitled to greater share of prize in divorce action because lottery winnings were predominately result of fortuitous circumstances and not the result of husband's toil or labor); *Ullah v. Ullah,* 161 A.D.2d 699, 555 N.Y.S.2d 834, 835 (1990) (Lottery jackpot, including future payments, the right to which arose during the marriage and on a wager of marital funds was "marital property" subject to equitable distribution). *Accord Dyer v. Dyer,* 370 Pa.Super. 377, 536 A.2d 453, 456 (1988) (Lottery winnings that were not acquired during the marriage were husband's sole and separate property).

**3.** While agreeing that the lotto winnings were marital property, the majority nonetheless, and somewhat inconsistently maintains that they may not be considered in making a monetary award because the marital family had ceased to exist when the lotto ticket was purchased. Because a separation signals and reflects the death of the marital family, at least for the time of the separation and whenever property is required after separation, it ordinarily involves the effort of but one of the spouses, the majority has developed a formula that, in effect, treats lotto winnings, and all such property, as nonmarital property, *i.e.,* property not subject to an equitable distribution.

acquired after the parties have separated.[4] The majority holds:

> While no hard and fast rule can be laid down, and while each case must depend upon its own circumstances to insure that equity be accomplished, generally in a case such as this the eighth factor should be given greater weight than the others. Where one party, wholly through his or her own efforts, and without any direct or indirect contribution by the other, acquires a specific item of marital property after the parties have separated and after the marital family has, as a practical matter, ceased to exist, a monetary award representing an equal division of that particular property would not ordinarily be consonant with the history and purpose of the statute.

Op. at 507. It proffers that the history and purpose of the equitable distribution statute dictate that result. Acknowledging that the Legislature was concerned that "careful consideration [be] given to both monetary and nonmonetary contributions made by the respective spouses to the well-being of the family," *see* Ch. 794, Acts of 1978, the majority asserts that

> [t]he history of the statute indicates that the General Assembly was primarily concerned with achieving equity by reflecting non-monetary contributions to the acquisition of marital assets, and that principle should be a major consideration in a trial judge's analysis.

Op. at 506–507. In the majority's view, this translates into according "the eighth factor, relating to 'how and when specific marital property' was acquired and the contribution that each party made toward its acquisition ... considerable weight." *Id.* The majority initially focused on what it perceived to be the chancellor's knee jerk inclination equally to divide the lotto winnings. It then purports to acknowledge that it is the chancellor's role to weigh the relevant factors and

---

4. The Court, to be sure, inserts the condition that the marriage, for all intents and purposes, is dead; that condition would be met, for whatever period it continues, whenever there is a separation.

exercise discretion to make an appropriate monetary award, which under some circumstances, may be an equal division of the property. A remand for that purpose ordinarily would have been required. Rather than remanding the case for that purpose, however, the Court makes clear its real holding when it determined that "the record before us contains no evidence which would justify awarding any portion of the annuity to Mrs. Alston." Op. at 509. Whenever a lotto ticket is purchased after separation by one of the parties, the record will contain the same evidence; hence, as a matter of law, in no such case would the non-purchasing spouse be entitled to a monetary award of any portion of the winnings.

Before today's decision, the determination whether to make a monetary award was entrusted to the trial judge's discretion, not to a reviewing court to determine as a matter of law. Before today, after determining which property is marital property, the chancellor was not then required further to categorize the marital property as property acquired before separation and property acquired after separation. That was not required because, by reference to the factors the Legislature defined to inform the decision whether to make a monetary award, the health of the marital family when the asset was acquired was readily and unmistakenly apparent. It was not required for another reason—nothing in the statute, or case law, for that matter, permitted the chancellor to treat marital property acquired after separation differently from marital property acquired before separation. Simply put, as a "[r]ose is a rose is a rose is a rose"[5], "[p]roperty acquired by a party up to the date of divorce, *even though the parties are separated,* is marital property," *Williams v. Williams,* 71 Md.App. 22, 34, 523 A.2d 1025, 1035 (1987), and as such, is accorded the same treatment, for purposes of the determination of a monetary award, as is property acquired before the separation. In *Wilen v. Wilen,* 61 Md.App. 337, 486 A.2d 775 (1985), the Court of Special Appeals graphically made this very point. There, the trial court determined that the mar-

---

5. Gertrude Stein, *Sacred Emily,* 1913.

riage was "factually dead" as of September 1, 1981 and concluded that property acquired after that date should not be considered marital property. *Id.* at 345, 486 A.2d at 779. The intermediate appellate court reversed, holding that the chancellor's refusal to consider the substantial assets acquired between separation (September 1, 1981) and divorce (November 1983) was improper. *Id.*, 486 A.2d at 779–80.

The effect of today's decision is further to define "marital property," to engraft onto the definition, a refinement based on when the property was acquired, and to require the chancellor to assess whether such property may be a predicate for a monetary award on the basis of one of the ten factors required to be considered when the property is acquired before separation. Being aware of the definition we have given it, had the Legislature desired to do so, it certainly could have either redefined "marital property" and excluded from that definition any property acquired after the separation, but prior to the divorce or, within the existing definition, accorded a different treatment for pre-separation marital property and post-separation marital property.

By its opinion, the majority mandates two categories of marital property and two standards for reviewing decisions relating to monetary awards. Property acquired before separation is one category; if a monetary award is made from that property, the reviewing court must look to determine if all ten factors in section 8–205 have been considered. Moreover, none of them is to be accorded greater weight than another as a matter of law. Thus, had the petitioner acquired the lotto ticket, pre-separation, even if by only an hour, the chancellor's decision to weigh all of the relevant factors would not be a problem for the majority. If, however, the property were acquired after separation, even if by only an hour, a different result would obtain; factor eight would have to be weighted more heavily and even to the exclusion of the other factors. In fact, that fact, on review, would be decisive.

In no case has a court of this State held or even suggested that one of the factors in section 8–205(b) should, as a matter

of law, weigh more heavily than another. *See Prahinski v. Prahinski,* 321 Md. 227, 229–30, 582 A.2d 784, 785 (1990); *Herget v. Herget,* 319 Md. 466, 471, 573 A.2d 798, 800 (1990); *Manns v. Manns,* 308 Md. 347, 351, 519 A.2d 740, 742 (1987); *Archer,* 303 Md. at 350, 493 A.2d at 1076; *Lookingbill v. Lookingbill,* 301 Md. 283, 293, 483 A.2d 1, 6 (1984); *Hoffman v. Hoffman,* 93 Md.App. 704, 712, 713, 614 A.2d 988, 992 (1992); *John O. v. Jane O.,* 90 Md.App. 406, 425, 601 A.2d 149, 160 (1992); *Melrod v. Melrod,* 83 Md.App. 180, 185, 574 A.2d 1, 3, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990); *Hughes v. Hughes,* 80 Md.App. 216, 229, 560 A.2d 1145, 1149 (1989); *Watson v. Watson,* 77 Md.App. 622, 627, 551 A.2d 505, 507 (1989). The statute suggests only that each of the factors is to be given some weight: the statute states, in pertinent part, "The court shall determine the amount and the method of payment of a monetary award ... after considering *each* of the following factors...." § 8–205(b) (emphasis added). Moreover, the required factors are listed in the conjunctive. This, too, indicates that all of them must be considered. We have held that "the word 'and' should be interpreted according to its plain and ordinary meaning and that it is not inter-changeable with the word 'or.'" *Comptroller v. Fairchild Industries,* 303 Md. 280, 285–86, 493 A.2d 341, 343–44 (1985). There is nothing in the statute or case law to suggest that the Legislature intended that the factors in section 8–205(b) be interpreted other than in the conjunctive; thus, requiring the chancellor to weigh each of the factors. "Where the interpre-tation of a statute is such as to place it in the conjunctive, an applicant for a variance must show both practical difficulty and hardship in order to have a court interpret the statute in the disjunctive." 1A Norman J. Singer, *Sutherland Statutory Construction,* § 21.14, at 128 (4th ed. 1985). Thus,

[i]n making the ... determination [of what sum of money, if any, should be awarded to one spouse or the other as an equitable adjustment], ... the chancellor is obliged to con-sider *all* of the criteria set forth in ... § 8–205.... and *[h]ow much weight should be given to each factor in each*

> *case is a matter entirely within the chancellor's sound discretion.*

*Wilen,* 61 Md.App. at 355, 486 A.2d at 784 (emphasis added).

To be sure, a chancellor must and, in fact, would be remiss if he or she did not consider how, and when, marital property was acquired. This, however, does not require or, for that matter, permit the chancellor *only* to consider those matters. But, once it is determined that the property was acquired after separation and by the efforts of one spouse alone, that is the effect of the majority opinion. Because in that situation, the record will never "contain[ ] ... evidence which would justify awarding any portion of the annuity" to the other party, the effect of the majority opinion is to preclude, as a matter of law, such post-separation property from being the source of a marital award, whatever the result that consideration of the other factors would dictate. I agree with the intermediate appellate court, once the chancellor concludes that the property acquired during the parties' separation was marital property, *"the method of acquisition ... bec[omes] merely one factor among ten statutory factors, with its weight to be determined by the court as trier of fact." Alston v. Alston,* 85 Md.App. 176, 188, 582 A.2d 574, 510 (1990), *cert. granted,* 322 Md. 333, 587 A.2d 510 (1991) (emphasis supplied). I would hold that it is the chancellor's duty, not ours, to consider all of the factors and determine the weight to be given to each factor.[6]

Making the determination whether particular property may be the basis of a monetary award to depend primarily on the timing of its acquisition not only flies in the face of the legislative scheme and the interpretation we have given marital property, but it has the effect, as I have shown, of treating

---

6. The majority suggests that in this case the chancellor "succumbed to the temptation to divide the property equally." Op. at 14. There is absolutely nothing in the record to support that suggestion; in fact, the record tends to prove the opposite—that the chancellor arrived at the amount of the award after considering all the facts. The record does not read to a conclusion that the award settled upon was a knee-jerk reaction to the petitioner having hit the lotto.

the same kind of property differently based only on that factor. Moreover, as I have also shown, an unnecessary layer of review, requiring consideration of different factors depending on the timing of acquisition, is imposed.

Prior to today, a trial court's decision to make a monetary award, the identification of the property from which it is to be made and the award itself could be reversed only where it was "clear from the record that the [court] gave no more than lip service to the [ten] factors", *Alston,* 85 Md.App. at 188, 582 A.2d at 579, quoting *Ward v. Ward,* 52 Md.App. 336, 343–44, 449 A.2d 443, 448 (1982), or "where the court misinterpreted or dismissed as unimportant one of the factors." *Id.* at 188, 582 A.2d at 579–80, citing *Mount v. Mount,* 59 Md.App. 538, 476 A.2d 1175, 1183 (1984). Now, when property is acquired after separation, the trial court's monetary award decision as to that property may be reversed if factor eight is not accorded considerable weight.

If the Legislature had intended the result the majority reaches, it could, and probably would, have drawn a distinction between pre-separation and post-separation acquired property or, at least, prioritized the required factors according to importance, perhaps listing factor eight as most important. Currently, "how and when the marital property was acquired" is the eighth of the ten factors, indicating, if anything at all, that it is not to be accorded overriding importance. *See Giedinghagen v. Giedinghagen,* 712 S.W.2d 711 (Mo.App. 1986), in which the court held

> We do not hold nor intimate that husband here is entitled to any portion of the proceeds of the lottery winnings. The court is to make a just distribution of the marital property and in doing so may take into account the contribution of each spouse to the acquisition of the property *as well as other considerations.*

*Id.* at 714 (emphasis omitted and supplied).

The determination of whether a spouse is entitled to a monetary award in respect of the acquisition of marital property and, if so, in what amount has been entrusted by the

Legislature to the sound discretion of the chancellor, the latter decision required to be made by the chancellor upon the consideration of the factors enumerated in section 8–205(b). That decision was not, and should not be, made to depend upon when the property was acquired or whether the reviewing court believes the result the chancellor reaches to be harsh.