280 N.J. Super. 488 (1995)
655 A.2d 970
ROSEANNE DEVANE, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
DONALD DEVANE, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 13, 1995.
Decided March 31, 1995.
*489 Before Judges PETRELLA, HAVEY[1] and CUFF.
Sanford M. Kahan argued the cause for appellant/cross-respondent (Simon & Enright, attorneys; Mr. Kahan on the brief).
*490 George E. Sabbath argued the cause for respondent/cross-appellant (Sabbath, Struble, Ragno, Petrie, Oroho & Spinato, attorneys; Mr. Sabbath on the brief).
The opinion of the court was delivered by CUFF, J.S.C. (temporarily assigned).
In this matrimonial action, plaintiff Roseanne DeVane appeals from the Judgment of Divorce which provided that lottery winnings should be equally distributed between the spouses. Defendant Donald DeVane has filed a cross-appeal from a provision of the Judgment of Divorce which imposes a trust on his share of the lottery winnings and the allocation of defendant's pendente lite medical expenses to him.[2] We affirm.
The parties were married on October 25, 1974. Two children were born of the marriage. Their daughter was eighteen years old at the time of the trial and a freshman at Seton Hall University. Their son was seventeen and a senior in high school.
Defendant was employed as an ironworker at the time of the marriage and remained so employed until October 2, 1987. Plaintiff, who was employed as an office worker at the time of her marriage, stopped working before the birth of the parties' first child. Plaintiff returned to the work force as an office worker earning approximately $13,000 per year in 1985. In the interim, defendant was the sole financial support of the family.
On October 1, 1987, plaintiff won 3.6 million dollars in the New Jersey Lottery payable on October 1 of each year for twenty years in annual installments of $186,000. On October 2, 1987, defendant quit his job. At the time of trial, plaintiff was to receive installments for thirteen more years. Her net installment check was $143,623 in 1987, and $146,000 in 1988, 1989, 1990. The payment *491 has declined as taxes have increased, and by 1993, her net installment check was $131,400.
Defendant's health has not been good. In 1985, he suffered from gout and a recurring boil. In December 1990, portions of his intestine and bladder were removed, and he underwent a colostomy. He has had three additional surgeries involving his stomach in May 1990, August 1992, and October 1992.
In October 1990, plaintiff filed a complaint for divorce. Defendant moved from the marital home in November 1990. In a reported decision, Hon. Edward V. Gannon, J.S.C. held that the lottery winnings were subject to equitable distribution. DeVane v. DeVane, 260 N.J. Super. 501, 503, 616 A.2d 1350 (Ch.Div. 1992). We do not read the Notices of Appeal and Cross-Appeal to raise the issue of whether the lottery winnings are subject to equitable distribution. In any event, we agree with Judge Gannon that the winnings are a marital asset and subject to equitable distribution. Judge Gannon appropriately deferred the distribution of this asset to trial.
The case was tried over five days before the Hon. Catherine Langlois, J.S.C. In her decision, she concluded that the lottery proceeds should be shared equally between the parties. In reaching her decision, Judge Langlois examined several cases from other jurisdictions, many of which subscribe to the "windfall" theory and therefore divide the winnings equally without reference to statutory or common law factors governing equitable distribution. She determined that Ullah v. Ullah, 161 A.D.2d 699, 555 N.Y.S.2d 834 (App.Div.), app. denied, 76 N.Y.2d 704, 559 N.Y.S.2d 983, 559 N.E.2d 677 (1990), stated the appropriate rule. In Ullah, the court held that lottery winnings should be divided equally since the asset came into being by purely fortuitous events. Alternatively, applying the equitable distribution factors set forth in N.J.S.A. 2A:34-23.1, Judge Langlois determined that an equal distribution of the proceeds was also "the equitable thing to do."
*492 Two distinct rules have emerged concerning the manner in which lottery winnings should be disbursed between the parties on the dissolution of the marriage and distribution of marital assets. One rule, represented by Ullah, emphasizes that the asset is a windfall and was not created due to the efforts of either party; therefore, it should be divided equally. Ullah, supra, 161 A.D.2d 699, 555 N.Y.S.2d at 835. Accord Smith v. Smith, 162 A.D.2d 346, 557 N.Y.S.2d 22 (1990), app. denied, 77 N.Y.2d 805, 568 N.Y.S.2d 913, 571 N.E.2d 83 (1991); In re Marriage of Mahaffey, 206 Ill. App.3d 859, 151 Ill.Dec. 638, 564 N.E.2d 1300 (1990). The other rule is represented by Alston v. Alston, 331 Md. 496, 629 A.2d 70, 72 (1993), which holds that the court should apply the factors guiding equitable distribution of all other assets to arrive at an appropriate distribution decision. Accord Holliday v. Holliday, 651 A.2d 12 (N.H. 1994); In re Marriage of Morris, 266 Ill. App.3d 277, 203 Ill.Dec. 685, 640 N.E.2d 344 (1994); In re Marriage of Swartz, 512 N.W.2d 825 (Iowa App. 1993). See also Gibbons v. Gibbons, 174 N.J. Super. 107, 116, 415 A.2d 1174 (App.Div. 1980) (lottery winnings treated no differently than other unearned income), rev'd on other grounds, 86 N.J. 515, 432 A.2d 80 (1981). Placing primary emphasis on the factor which requires the court to consider how and when the asset was acquired, the Maryland Court of Appeals in Alston held that the wife was not entitled to any portion of the lottery winnings. The Alston Court emphasized that the parties had been separated many years and that the husband acquired the lottery ticket wholly through his own effort without any contribution or encouragement from his wife. Furthermore, he won the lottery after the complaint for divorce had been filed.[3]
*493 An examination of these various authorities leads us to the conclusion that the rule announced by the Maryland Court of Appeals is more consonant with the principles governing equitable distribution in this State. Indeed, virtually from its enactment, the Supreme Court has eschewed a mechanistic approach to equitable distribution. In Rothman v. Rothman, 65 N.J. 219, 232, 320 A.2d 496 n. 6 (1974), the Court expressly disapproved of a presumption of equal distribution of marital assets noting that such a presumption found no support in the language of the statute and could lead to inequities. We can readily envision situations in which a per se equal distribution rule would be patently inequitable due to, for example, widely disparate educational backgrounds and earning capacities between the spouses or one spouse's affliction with a debilitating medical condition. We depart from Alston, however, and decline to emphasize one factor over others. Rather, we conclude that the trial judge should apply all the factors set forth in N.J.S.A. 2A:34-23.1 and distribute the marital assets consistent with the unique needs of the parties.
Applying those statutory principles, we are satisfied that Judge Langlois' findings of fact are supported by substantial credible evidence, Rova Farms Resort v. Investors Ins. Co. of America, 65 N.J. 474, 484, 323 A.2d 495 (1974), and that she did not abuse her discretion. Savoie v. Savoie, 245 N.J. Super. 1, 5, 583 A.2d 762 (App.Div. 1990).
On cross-appeal, defendant contends that the trial judge erred in creating a trust account for his child support obligations. We conclude that Judge Langlois did not abuse her discretion in this regard. We note that defendant has not worked one day since his wife won the lottery in 1987. While he has had some significant health problems, we note that his application for Social Security Disability benefits has been rejected implying that he *494 retains some ability to engage in some substantial gainful activity. See 42 U.S.C.A. § 423.
Defendant also appeals the allocation to him of medical expenses incurred pendente lite. These medical expenses were not marital debt. Painter, supra, 65 N.J. at 218, 320 A.2d 484 (filing date of the complaint will determine the termination date for the purpose of equitable distribution). As such, it was appropriate for Judge Langlois to order that both parties were responsible for their own medical expenses after the date of the filing of the complaint.
Affirmed.
NOTES
[1] Judge Havey did not participate in oral argument. However, the parties have consented to his participation in the decision.
[2] In his notice of cross-appeal, defendant also cited the decision to give his wife sole custody of the minor child of the marriage as an issue on appeal. This issue, however, has not been briefed, and we consider it abandoned.
[3] The husband won the lottery several days before his answer to his wife's complaint was due. Under Maryland law, it appears that the marriage is still alive or has not "expired" until an answer has been filed or the time to file an answer has expired. We note that, in the absence of a qualifying agreement, in this state the date the complaint is filed is considered the termination point for the determination of marital assets. Painter v. Painter, 65 N.J. 196, 209, 320 A.2d 484 (1974). See also Brandenburg v. Brandenburg, 83 N.J. 198, 209, 416 A.2d 327 (1980); Raspa v. Raspa, 207 N.J. Super. 371, 383, 504 A.2d 683 (Ch.Div. 1985).