579 S.E.2d 310

**Angela J. THOMAS, Petitioner,**

v.

**Kevin M. THOMAS, Respondent.**

**No. 25619.**

Supreme Court of South Carolina.

Heard March 5, 2003.
Decided April 7, 2003.

James T. McLaren and C. Dixon Lee, III, of Columbia; and Timothy S. Mirshak, of Augusta, GA, for Petitioner.

Robert L. Widener, of McNair Law Firm, P.A., Columbia, for Respondent.

JUSTICE WALLER:

In this divorce case, we granted certiorari to review the Court of Appeals' decision in *Thomas v. Thomas,* 346 S.C. 20, 550 S.E.2d 580 (Ct.App.2001). We affirm as modified.

## FACTS

Angela Thomas (Wife) and Kevin M. Thomas (Husband) were married on May 2, 1992. Both parties had previously been married, and they each have two children from their

prior respective marriages. No children were born to this marriage, however.

In early August 1995, Wife bought a Georgia lottery ticket. One of the "quick-picks" on the ticket turned out to be the winning numbers for the $9 million grand prize, paid in annual installments over 20 years.[1] The lottery prize was claimed in Wife's name only. Although Wife testified that she always purchased the lottery tickets with her "pocket money," Husband stated that both he and Wife bought lottery tickets during the marriage. Husband also testified that he and Wife agreed to put the prize in her name so his former wife would not "come after" him for more child support.

Wife, who worked as a clerk at the Veterans Administration Hospital, immediately terminated her employment upon winning the lottery. Approximately one year later, Husband left his employment at D.S.M. Chemical. When they left their employment, Wife earned almost $20,000 per year, and Husband earned between $40,000 and $50,000 per year depending on overtime.

From the time Wife won the lottery until the parties' separation, the lottery money clearly was used by both of them as marital income. For example, they made significant improvements to the marital home, opened joint investment accounts, and also purchased a $225,000 lake house.

Wife and Husband separated on November 3, 1997, after a physical altercation occurred between them.[2] Wife filed for divorce on the ground of physical abuse. Husband also filed for divorce on the ground of one year's continuous separation. In 1999, the family court granted Husband a divorce on the ground of one year's separation. The parties agreed to the division of almost all of the property in the marital estate; therefore, the main issue at the divorce hearing was the division of the lottery proceeds. Noting that the issue was a

---

1. The pre-tax payments are $447,000 each, with the final payment in the amount of $485,000.

2. The parties had several problems throughout their marriage. According to Wife, Husband abused alcohol and acted inappropriately when intoxicated. They also had problems during the marriage arising from their respective children. Attempts at marriage counseling were unsuccessful.

novel one in South Carolina, the family court found the lottery proceeds were marital property, applied the New York case of *Ullah v. Ullah,* 161 A.D.2d 699, 555 N.Y.S.2d 834 (N.Y.App. Div.1990), and awarded 50 per cent of the remaining lottery proceeds to Husband. The family court also stated in its order that it had considered the fifteen statutory factors for the equitable apportionment of marital property. *See* S.C.Code Ann. § 20–7–472 (Supp.2002).

Wife appealed, arguing, *inter alia,* that the family court failed to apply the relevant statutory factors in determining equitable division of the lottery proceeds. The Court of Appeals affirmed.

## ISSUE

Did the Court of Appeals err in affirming the family court's 50% award of the lottery proceeds to Husband?

## DISCUSSION

Wife argues the Court of Appeals erred by failing to reverse the family court's application of the "fortuitous circumstances" rule of *Ullah v. Ullah.* She further argues the Court of Appeals erred by applying the statutory factors but not adopting this as the legal rule to be used for the division of lottery proceeds. Finally, Wife contends the family court erred in evenly splitting the lottery prize and that this Court should award her a greater share in the winnings.[3]

Although in the instant case the Court of Appeals clearly applied the statutory factors to affirm the family court's 50% award to Husband, the Court of Appeals' decision is arguably ambiguous on the novel issue of how the family court should properly divide lottery winnings in a divorce action. As noted by the Court of Appeals, a review of the relevant case law reveals that two approaches have evolved— the so-called "fortuitous circumstances" rule or the statutory factor analysis.

---

3. We note that the family court correctly found the lottery proceeds to be marital property, and neither party has appealed this finding.

The fortuitous circumstances rule can be traced to *Ullah v. Ullah*, a New York case. In that case, Mr. Ullah purchased a New York State "Lotto" ticket and won $8 million, payable in 21 annual installments. Within months after winning, Mr. and Mrs. Ullah resigned from their jobs. *Ullah v. Ullah*, 555 N.Y.S.2d at 835. In their divorce action, Mr. Ullah appealed from a judgment that awarded his wife an equal share of the winnings. The *Ullah* court affirmed, stating as follows:

> While a guiding principle of equitable distribution is that parties are entitled to receive equitable awards which are proportionate to their contributions to the marriage, . . . in the instant case **the contributions each spouse made prior to winning the prize have little relevance to the manner in which the lottery jackpot should be distributed.** This award was won through **sheer luck**, against odds of 12,913,-583 to one. As [the trial court] aptly recognized, this enormous return required "little effort or investment". **As it was predominately the result of fortuitous circumstances and not the result of either spouse's toil or labor, we find that an equal division of this jackpot was entirely appropriate.**

*Id.* (emphasis added, citations omitted).

An alternative view is found in *Alston v. Alston*, 331 Md. 496, 629 A.2d 70 (1993). The *Alston* court applied Maryland's equitable distribution statute on the issue of how to divide Mr. Alston's lottery prize of over $1 million. Mr. Alston purchased the winning lottery ticket **after** the parties had separated, and **after** Mrs. Alston had filed for divorce. Mrs. Alston initially sought divorce based on the couple's voluntary separation for over one year; she did not seek alimony or a monetary award. However, after she learned that her husband had won the lottery, Mrs. Alston immediately dismissed the initial divorce complaint. She filed a second complaint approximately six months later for divorce on the ground of adultery and for a monetary award based on the lottery annuity. The trial court granted Mrs. Alston a divorce because of Mr. Alston's adultery and granted her 50% of the lottery proceeds. The intermediate appellate court affirmed, but that decision was reversed by the *Alston* court.

The *Alston* court discussed in depth the history and purpose of the equitable distribution statute, commenting that "the General Assembly was primarily concerned with achieving equity by reflecting non-monetary contributions of the acquisition of marital assets." *Id.* at 75. The court stated that "no hard and fast rule can be laid down" regarding the division of lottery winnings and that "each case must depend upon its own circumstances to insure that equity be accomplished." *Id.*

Nonetheless, the *Alston* court noted that the eighth factor in the statute, regarding "how and when specific marital property" was acquired and the contribution that each party made toward its acquisition, "should be given considerable weight." *Id.* In addition, the *Alston* court stated the following:

Where one party, wholly through his or her own efforts, and without any direct or indirect contribution by the other, acquires a specific item of marital property **after the parties have separated and after the marital family has, as a practical matter, ceased to exist,** a monetary award representing an equal division of that particular property would not ordinarily be consonant with the history and purpose of the statute.

*Id.* at 76 (emphasis added). Thus, finding that the record contained "no evidence which would justify awarding any portion of the annuity to Mrs. Alston," the court reversed Mrs. Alston's 50% award and remanded for the trial court to revisit the issue of alimony. *Id.* at 77.

The court in *DeVane v. DeVane*, 280 N.J.Super. 488, 655 A.2d 970 (App.Div.1995), succinctly summarized the two approaches as follows:

Two distinct rules have emerged concerning the manner in which lottery winnings should be disbursed between the parties on the dissolution of the marriage and distribution of marital assets. One rule, represented by *Ullah*, emphasizes that the asset is a windfall and was not created due to the efforts of either party; therefore, it should be divided equally.... The other rule is represented by [*Alston*], which holds that the court should apply the factors guiding

equitable distribution ... to arrive at an appropriate distribution decision.

*Id.* at 971 (citations omitted). The *DeVane* court concluded that the trial judge should apply all the factors set forth in the New Jersey equitable distribution statute and "distribute the marital assets consistent with the unique needs of the parties." *Id.* at 972.

In South Carolina, the law of equitable distribution "is premised on providing the family court the flexibility to view each case based on the individual circumstances peculiar to the parties involved and to fashion a division of the parties' assets in a manner that is uniquely fair to the parties concerned." *Marsh v. Marsh*, 313 S.C. 42, 46, 437 S.E.2d 34, 36 (1993). Because we can foresee numerous scenarios where a mechanistic, 50–50 split would be inequitable, we reject the fortuitous circumstances rule.[4] Instead, we hold that the statutory factor analysis is the proper method for determining the equitable apportionment of lottery proceeds. Equity will best be served if the family court has at its disposal all the factors enumerated in the statute thereby allowing the court to take into consideration "the unique needs of the parties." *DeVane*, 655 A.2d at 972; *see also Marsh, supra.* Accordingly, when the family court is faced with this issue in the future, the 15 statutory factors found in the equitable apportionment statute should be the family court's guide. *See* S.C.Code Ann. § 20–7–472 (Supp.2002).

Nevertheless, we note that the third and fifteenth statutory factors likely will be given particular attention in a case such as this. *See Alston, supra.* The third factor requires the family court to take into consideration "the value of the marital property" and "the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence."

---

4. For example, if a spouse buys a winning lottery ticket after the parties have separated, but before they have divorced, the family court should be able to take that into consideration. *See Alston, supra* (where, in reversing a 50–50 award, the court seemed to place heavy emphasis on the fact that at the time the husband purchased the lottery ticket, "the marital family ha[d], as a practical matter, ceased to exist").

The fifteenth factor is a "catchall" which provides that the family court consider "such other relevant factors as the trial court shall expressly enumerate in its order." Clearly, the family court should take into consideration the fact that winning the lottery is a lucky occurrence producing what is, in essence, a windfall to the marriage.

Turning to the facts of the instant case, the Court of Appeals applied the statutory factors to affirm the family court's 50% award to Husband. Wife asserts that because she purchased the lottery ticket, her contribution should be considered greater thereby entitling her to more than a 50% share of the lottery proceeds. However, we agree with the Court of Appeals' conclusion that "an equal distribution was fair and equitable under the facts and circumstances of this case." *Thomas*, 346 S.C. at 27, 550 S.E.2d at 583. Although Wife bought the ticket, the facts of this case plainly show that prior to their separation, the parties jointly shared the winnings. Wife cannot escape the fact that this was a windfall to the marriage resulting from the luck of the draw. We find a 50–50 split to be the appropriate, equitable apportionment of the lottery proceeds.

Furthermore, we agree with the Court of Appeals that the family court's order indicated that the statutory factors indeed were considered. The family court did more than merely state in its order that it had considered the factors. Instead, the family court made numerous findings of fact which clearly evidence its consideration of the statutory factors.[5] Therefore, the Court of Appeals properly affirmed. *E.g., Jenkins v. Jenkins*, 345 S.C. 88, 545 S.E.2d 531 (Ct.App.2001) (if it can be determined that the family court addressed the factors under section 20-7-472 sufficiently for the appellate court to conclude the court was cognizant of the statutory factors, then the family court's decision will be affirmed).

---

5. For example, the family court detailed the duration of the marriage, the parties' respective situations regarding the children from their previous marriages, and their health. The family court also noted that Husband and Wife both: have a high school education, provided income to the marriage as well as other non-economic contributions, and are the same age.

## CONCLUSION

In sum, we adopt the statutory factor analysis as the appropriate method for the equitable division of lottery proceeds in a divorce action. We affirm the decision to evenly split the lottery winnings between Husband and Wife.

**AFFIRMED AS MODIFIED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.