**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0835-16T3

AYSEL SONUPARLAK,

     Plaintiff-Appellant,

v.

KADRI EROL SONUPARLAK,

     Defendant-Respondent.

_____

Submitted March 21, 2018 – Decided September 20, 2018

Before Judges Koblitz and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket FM-02-0640-15.

Ferro and Ferro, attorneys for appellant (Nancy C. Ferro, on the brief).

Jeffrey M. Bloom, attorney for respondent.

The opinion of the court was delivered by

SUTER, J.A.D.

Plaintiff Aysel Sonuparlak appeals from the alimony, equitable distribution and attorney's fee portions of the September 14, 2016 dual judgment of divorce. We affirm the judgment.

Plaintiff and defendant Kadri Erol Sonuparlak were married in 1983 in Turkey. Plaintiff filed for divorce on September 12, 2014. A judgment of divorce for irreconcilable differences was entered on September 14, 2016, following a seven-day bench trial. Plaintiff was sixty-four and defendant was sixty-three at that time. They have one child, who is an adult.

The judgment awarded plaintiff $550 per week in spousal support but expressly provided that defendant could file a motion to adjust it upon retiring or reaching retirement age. Plaintiff received equitable distribution valued at $481,000, consisting of the marital home, her retirement account, a certificate of deposit, individual retirement account, bank accounts in her name, "all rights, title and interest" in defendant's corporation, Ada-Itir,[1] and a cash payment from defendant of $37,500. There was $387,500 in equity in the marital home.[2] Their

_____

[1] Defendant testified the corporation had considerable debts. There was no appraisal of the corporation's value.

[2] The parties stipulated the marital home was valued at $732,500 with a $344,688.08 mortgage.

A-0835-16T3

properties in Turkey, referred to as "Basin Koop and Konut 2" were to be sold, with plaintiff receiving forty-five percent of the proceeds and defendant fifty-five percent.[3] Defendant owned fifty percent of a vacant parcel of land in Turkey. When sold, plaintiff was to receive 11.25 percent of the proceeds and defendant 38.75 percent. The judgment provided that defendant was to receive "value of approximately [sixty-five percent] of the marital estate." This consisted of all bank and retirement accounts in his name and constituted the bulk of the parties' liquid assets.

On appeal, plaintiff contends the trial court erred by "reducing" the amount of her spousal support. She denied the improper use of marital assets and disputed the court's finding she was not credible about her financial needs. She claimed the court made factual errors about her ability to earn income. Plaintiff argued the court erred in its distribution of their marital property. She claimed the court should not have denied her request for attorney's fees.

"[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family

---

[3] Plaintiff purchased a third property for their daughter. Defendant did not want to sell that apartment. It was not included in the judgment.

A-0835-16T3

matters."  N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)).  We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence.  N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).  However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We will not disturb an alimony award on appeal if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice."  Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001).  The question is whether the trial judge's factual findings are supported by "adequate, substantial, credible evidence" in the record and the judge's conclusions are in accordance with the governing principles.  Ibid.; accord Gnall v. Gnall, 222 N.J. 414, 428 (2015).

A-0835-16T3

"[T]he goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage." Crews v. Crews, 164 N.J. 11, 16 (2000). It is "critical" and "essential" to "[i]dentify[] the marital standard of living at the time of the original divorce decree . . . regardless of whether the original support award was entered as part of a consensual agreement or of a contested divorce judgment." Id. at 25. In awarding alimony, the judge must consider the thirteen factors enumerated in N.J.S.A. 2A:34-23(b), along with any other factors deemed relevant.

Here, the trial court methodically and thoroughly addressed all of the applicable factors under N.J.S.A. 2A:34-23(b). The judge considered the parties' case information statements (CIS), their testimony about lifestyle and financial needs, and all of the written evidence in evaluating that the parties' lifestyle was middle class. The record supported this finding.

In determining plaintiff's need for spousal support, the court compared her September 2014 CIS,[4] which showed expenses of $3713 per month, with her trial testimony, where she claimed expenses of $7030 per month. Citing to

---

[4] Plaintiff has included her October 2014 CIS in the appendix showing total expenses of $2769.

A-0835-16T3

specific examples, the court found "[s]everal of the asserted 'needs' . . . were clearly made up numbers with little or no basis in reality." Her health insurance figure provided for a plan "much better" than she had currently, and included new coverages for dental and vision. She unpersuasively claimed her food expense of $850 per month was for "fruit." Plaintiff included a $350 per month restaurant expense and phone expenses for her adult daughter. She could not explain why her expenses increased by $3300 per month from the prior CIS.

On appeal, plaintiff contends her testimony about expenses was an estimate of what she would need after the divorce. We are satisfied the court took all of the evidence into consideration in finding plaintiff's expenses were not reflective of her needs following the divorce.

The trial court found plaintiff's testimony "in general" was not credible. "She rarely made eye contact. She was unable to substantiate claims asserted with regard to hidden assets." We defer to the court's credibility findings. "Because a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the veracity of witnesses." Cesare, 154 N.J. at 412 (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alterations in original) (other citations omitted).

A-0835-16T3

The trial court did not err in finding plaintiff was capable of gainful employment. Plaintiff was sixty-four at the time of the trial but not employed.[5] She had a bachelor's degree in art history and a master's degree in Christian architecture. In her curriculum vitae, plaintiff claimed she was fluent in Turkish and English, describing herself as "a public relations specialist with over twenty-five years of experience." She had been employed as a "press official in the Turkish government," a "vice-president at a leading Turkish bank" and a journalist for two decades. She was the "public relations director for a bank in Ankara and "chief editor of domestic news and a journalist for over fourteen years." In 1997, plaintiff was transferred to the United States for three years as vice-president of a Turkish bank where she was a supervisor of "a staff of [seventy-two] and an annual budget of about $1,000,000." There she earned $82,000 a year.

When that job ended after three years, she did not want to return to Turkey, declining the offer to work with another bank because the position was in Turkey. She retired in August 2000 when she was forty-eight and began to draw

---

[5] Defendant was employed in the engineering field where he earned $200,000 annually with bonuses.

A-0835-16T3

a Turkish pension of $6000 per year. She had minimal employment after that, listing only "freelance journalist" as her employment.

Although plaintiff did not pass the real estate license test and had a heart attack in 2003, she was capable of working, she wanted to work and she managed the parties' rental properties in the United States and in Turkey. The court did not err in finding evidence that "[plaintiff's] skill set [was] . . . transferable to any number of positions leading to gainful employment."

In determining spousal support, the court took into consideration that plaintiff "took thousands of dollars in marital assets" without disclosing it to defendant. Plaintiff claims this was error.

Where one spouse has dissipated the marital assets, a court can impose a debt on the dissipating "spouse in favor of the other." Kothari v. Kothari, 255 N.J. Super. 500, 510 (App. Div. 1992). The factors to consider are:

> (1) the proximity of the expenditure to the parties' separation, (2) whether the expenditure was typical of expenditures made by the parties prior to the breakdown of the marriage, (3) whether the expenditure benefited the "joint" marital enterprise or was for the benefit of one spouse to the exclusion of the other, and (4) the need for, and amount of, the expenditure.
>
> [Id. at 507 (quoting "Spouse's Dissipation of Marital Assets Prior to the Divorce as a Factor in Divorce Court's Determination of Property Division," 41 A.L.R. 4th 416, 421 (1985)).]

The court's general concern is "whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate." Ibid.

Here, there was evidence to support the court's finding that plaintiff "failed to disclose her actions with regard to dissipation of marital assets." Plaintiff gave $17,000 in marital funds to her sister but she did not prove that her sister repaid her. She used her pension and rents collected from the Basin Koop property for her personal expenses. She deposited this money in an account to which defendant did not have access. Plaintiff admitted increasing her use of marital funds for personal expenses by one to two thousand dollars per month after the divorce complaint was filed. She agreed this amount was greater than she had taken out during the marriage, because she had not asked for pendente lite alimony. Plaintiff also diverted the rental payments on the Konut Two apartment away from defendant without consulting him.

We agree there was substantial credible evidence in this record to support the court's finding that plaintiff used marital funds on personal expenses for which defendant received no benefit. The loan to her sister, the increase in use of marital funds and the new lease that redirected rents away from defendant were all near or after the divorce complaint was filed. Plaintiff did not claim

9

that these expenditures benefited the marital enterprise. She did not allege these were typical expenses.

We do not agree, however, that plaintiff's use of other marital funds during the marriage showed an intent to dissipate marital assets. Plaintiff drew a pension beginning in 2000 and admitted using the funds for herself when defendant thought she was saving it for retirement. At the same time, defendant did not deny using his own pension funds as start-up money for his Ada-Itir corporation. Defendant gave money to his parents to buy a house and in 2001, to his sister. These also were marital funds. Kothari did not resolve whether the "dissipation concept" included funds spent during the marriage when the parties were not contemplating separation. Ibid. We affirm the court's findings based upon plaintiff's loan to her sister, plaintiff's increase in spending for personal expenses and her redirection of rent monies that occurred near or after she filed for divorce.

Plaintiff contends that the court erred in its order regarding equitable distribution. We do not agree the court abused its discretion.

We review a trial judge's decisions concerning the allocation of assets for equitable distribution for abuse of discretion. See Williams v. Williams, 59 N.J. 229, 233 (1971); Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App.

10

Div. 1978).  "The goal of equitable distribution . . . is to effect a fair and just division of marital assets."  Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004).  In allocating assets for equitable distribution, "the court must decide what specific property each spouse is eligible to receive by way of distribution; the value of such property for purposes of distribution; and how such allocation can most equitably be made after analysis of the factors set forth in N.J.S.A. 2A:34-23.1."  Sauro v. Sauro, 425 N.J. Super. 555, 572-73 (App. Div. 2012).  The determination need only reflect that the "trial judge . . . appl[ied] all the factors set forth in N.J.S.A. 2A:34-23.1 and distribute[d] the marital assets consistent with the unique needs of the parties."  DeVane v. DeVane, 280 N.J. Super. 488, 493 (App. Div. 1995).  A court is not required to divide assets evenly.  See Rothman v. Rothman, 65 N.J. 219, 232 n.6 (1974).

Here, the court addressed the applicable factors under N.J.S.A. 2A:34-23 in unevenly apportioning the marital assets.  Given our standard of review, we cannot conclude the court misapplied its discretion.  Plaintiff was awarded the marital home, which had more than $300,000 in equity.  She obtained all of her bank accounts plus defendant's corporation.  She will receive forty-five percent of the investment properties in Turkey for which there were no appraisals. The apartment that she purchased for her daughter was not included in the judgment.

A-0835-16T3

Although plaintiff disagrees with the division of the property, the court considered and analyzed all the factors, concluding that the division would not be fifty/fifty because of plaintiff's actions. We cannot say the court's order lacked support in the record or was without rational explanation.

Plaintiff argues the court erred by not awarding her counsel fees because she had the financial need to have defendant pay her fees, he had the ability to pay and the court did not expressly find her to have acted in bad faith. The assessment of attorney's fees is an issue left to the sound discretion of the trial court. Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010). "We will disturb a trial court's determination on counsel fees only on the rarest occasion, and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008) (citing Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Here, the court properly analyzed the factors under Rule 5:3-5(c) and RPC 1.5 in determining not to award counsel fees, and its decision is fully supported by the credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0835-16T3