**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5563-17T3

ROBERT M. FARULLA,

     Plaintiff-Appellant,

v.

SUZANNE FARULLA,

     Defendant-Respondent.

_____

Submitted April 9, 2019 – Decided June 18, 2019

Before Judges Fisher and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-1577-14.

November & Nunnink, LLC, attorneys for appellant (Laura A. Nunnink, on the brief).

Michael J. Pasquale, attorney for respondent.

PER CURIAM

     Plaintiff Robert M. Farulla appeals two portions of the Dual Final

Judgment of Divorce (DFJOD): the trial court's order that awarded defendant

Suzanne Farulla sixty percent of the marital portion of plaintiff's pension and that denied plaintiff any credit for the value of defendant's eleven-year-old vehicle. Because there was no abuse of discretion by the trial court, we affirm the DFJOD.

I

Five months after plaintiff retired, he filed for divorce from defendant, citing irreconcilable differences. They were married for seventeen years and had two children. The parties resolved custody and parenting time issues prior to trial, defendant obtained full-time employment, and they agreed that alimony was no longer an issue in the case. Other issues, including equitable distribution, were not resolved. Following a six-day bench trial—where only the parties were witnesses—the trial court decided the remaining issues in an oral decision that was memorialized in the DFJOD.

Plaintiff was employed by the Bergen County Sheriff's Department before the parties married. He continued employment there during the marriage, earning over $100,000 annually until he retired in 2013 at age forty-four from the Police and Fireman's Retirement System. The parties purchased the last two years of creditable service in 2012 by using the proceeds from a $20,000 home

2

equity loan. After his retirement, plaintiff obtained employment at Home Depot earning $36,400 annually.

Defendant was a mammography technician working full time, earning $49,920 per year. During most of the marriage, she worked part-time, earning considerably less.

The parties agreed that the marital portion of plaintiff's pension was 72.99 percent. By allocating sixty percent of the marital portion to defendant rather than fifty percent, defendant received $490.05 more per month and plaintiff sustained an equivalent reduction.

The trial court evaluated each of the factors in N.J.S.A. 2A:34-23.1 in allocating the pension. The court found that the parties were married for seventeen years. They both were forty-nine years old and had certain chronic medical conditions. "Neither party brought significant income or property to the marriage." They maintained a middle class standard of living during the marriage. The parties did not have a property settlement agreement. During the marriage, defendant was the primary caretaker for the children and worked part-time, earning less than $16,000 annually. She was laid off in 2016 but found full-time employment before trial, earning $49,920. Plaintiff earned between $100,000 and $120,000 as a detective before his retirement; afterwards, he

earned $36,400 at Home Depot. His salary had increased only $1000 during his four years of employment there.

The court noted that defendant initially was a candidate for alimony based on the significant disparity in their incomes and because defendant had been financially dependent on plaintiff throughout the marriage. However, because of her employment, the parties agreed that alimony was no longer an issue. The court found that defendant would "undoubtedly have trouble covering all of her [and the children's] expenses" based on her earnings. She also had to pay for her medical insurance. She had no access to credit because she had filed a Chapter Seven bankruptcy in 2017. The court found that defendant would be depending on the pension for her shelter, transportation and personal expenses.

The court found that plaintiff's economic circumstances were better than defendant's. He had stable employment and a pension. He owned stock, had inherited commercial property and was purchasing stock options. The court concluded that plaintiff was "voluntarily underemployed" given his work history, qualifications, and current income. There were other jobs with an average salary that was higher than what he was earning based on the New Jersey Department of Labor and Workforce Development occupational employment statistics. The court found he was reluctant to seek a higher paying job.

A-5563-17T3

The marital home was sold and the proceeds were distributed prior to trial. The court found that repayment of the home equity loan benefited plaintiff and reduced defendant's share of the proceeds. The parties would each pay taxes on their share of the pension.

In considering the appropriate allocation for their marital property, the court considered that defendant needed to maintain a residence for the children as the parent of primary residence. She had no access to credit because of her bankruptcy while plaintiff had no significant debts. Her employment would not be adequate to pay all the expenses. Taking all of this into consideration, the court allocated the marital portion of the pension sixty percent to defendant and forty percent to plaintiff to "bring the parties closer in line financially."

Plaintiff requested a credit for fifty percent of the value of defendant's vehicle. He submitted a Kelley Blue Book estimate that showed defendant's 2008 Lincoln Navigator was worth $15,725 if sold to a third party. In denying this credit, the court noted that Kelley Blue Book is "considered useful, reliable and admissible to prove the value of used vehicles." However, plaintiff did not sustain his burden of establishing the value of the vehicle for purposes of equitable distribution because there was evidence about significant recent repair

bills and defendant's bankruptcy filing showed a much lower "trade-in" value and different mileage.

On appeal, plaintiff contends the trial court erred in awarding defendant sixty percent of the marital portion of the pension. He contends this should have been divided equally between the parties. He also argues that the court erred by denying him any credit for the value of defendant's 2008 Lincoln Navigator.

II

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). This deference is grounded in the understanding that trial judges are in the best position to hear and see witnesses and to get a feel for the case, which a reviewing court cannot do. State v. Watts, 223 N.J. 503, 516 (2015); see also State v. Nash, 212 N.J. 518, 540 (2013). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting

6

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We review a trial judge's decisions concerning the allocation of assets for equitable distribution for abuse of discretion. See Williams v. Williams, 59 N.J. 229, 233 (1971); Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978). Family part judges have broad discretion "in allocating assets subject to equitable distribution." M.G. v. S.M., 457 N.J. Super. 286, 293 (App. Div. 2018) (quoting Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012)).

"The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004), aff'd in part, modified in part, 183 N.J. 290 (2005). In undertaking this task, "the court must decide what specific property each spouse is eligible to receive by way of distribution; the value of such property for purposes of distribution; and how such allocation can most equitably be made after analysis of the factors set forth in N.J.S.A. 2A:34-23.1." Sauro v. Sauro, 425 N.J. Super. 555, 572-73 (App. Div. 2012). The decision need only reflect that the "trial judge . . . appl[ied] all the factors set forth in N.J.S.A. 2A:34-23.1 and distribute[d] the marital assets consistent with the unique needs of the parties." DeVane v. DeVane, 280 N.J. Super. 488, 493 (App. Div. 1995).

A-5563-17T3

A court is not required to divide assets evenly. See Rothman v. Rothman, 65 N.J. 219, 232-33 n.6 (1974) (rejecting "any simple formula" that the starting point in dividing marital assets was fifty percent and instructing instead that "each case should be examined as an individual and particular entity").

"The equitable distribution of a pension interest acquired during the marriage is grounded on the principle that 'a pension plan [is] a form of deferred compensation for services rendered.'" Barr v. Barr, 418 N.J. Super. 18, 33 (App. Div. 2011) (alteration in original) (quoting Whitfield v. Whitfield, 222 N.J. Super. 36, 45 (App. Div. 1987)). "Rather than receiving current income, the monies are deferred until retirement." Ibid.

Plaintiff was retired when he filed for divorce. The pension had fully matured by that time. No one disputes that defendant is entitled to equitable distribution of the marital portion of the pension.

We reject the arguments by plaintiff that the court abused its discretion in allocating the pension. The court did not err in considering the financial circumstances of the parties. The criteria under N.J.S.A. 2A:34-23.1 that a court "shall" consider includes the income brought to the marriage, the standard of living during the marriage and the economic circumstances of each party at the time the division of property becomes effective. The income and earning

A-5563-17T3

capacity is to be considered, as well as responsibilities for children, the contributions of the parties to the property, and their debts and liabilities.

We disagree with plaintiff that the court made a factual error in finding he was underemployed based on his income in comparison to his training, experience and occupational employment statistics.[1]  He chose to obtain employment once he retired from public service.  The court simply noted there were other occupations he could perform for a higher income.

The court did not err in considering defendant's inability to pay her expenses.  The statute states that "[t]he economic circumstances of each party at the time the division of property becomes effective" shall be considered in the court's decision on equitable distribution of a marital asset.  N.J.S.A. 2A:34-23.1(f).

---

[1] There was no error by the court in considering the occupational employment statistics of the Department of Labor and Workforce Development (Department).  See Storey v. Storey, 373 N.J. Super. 464, 475 (App. Div. 2004); see also Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2019) (discussing how the court will impute income to parents for child support purposes by using the Department statistics).  The statistics were available to the public on the Department's website. Occupational Employment Statistics Wage Survey, State of New Jersey Department of Labor and Workforce Development (May 2018), https://www.nj.gov/labor/lpa/employ/oeswage/oeswage_index.html.

The court did not make a finding that defendant qualified for alimony but simply observed that defendant was financially dependent throughout the marriage. The evidence presented was that throughout the marriage, there was a financial disparity between the parties.

The court thoroughly reviewed the evidence and applied the required statutory factors. There is no indication that the court allocated the pension to include the premarital portion to which defendant was not entitled. Rather, an uneven distribution provided a more equitable and fair distribution given the parties' circumstances.

Plaintiff also appeals the DFJOD because the court did not award him a credit for half of the value of the 2008 Lincoln Navigator. A court cannot determine how allocation can equitably be made until it identifies the value of the marital property that is eligible for equitable distribution. Rothman, 65 N.J. at 232; see also M.G., 457 N.J. Super at 294.

The evidence showed disparate valuations. We cannot say that the court abused its discretion by holding that plaintiff did not meet his burden of establishing the value of the used vehicle for purposes of equitable distribution.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5563-17T3